## THE CLEVELAND RAILWAY CO. v. RANFT, ADMR., ET AL.

*Negligence — Excavation in street — Duty of contractors and street railway — Protection of alighting passengers.*

1. It is the duty of contractors who lawfully make dangerous excavations in public streets, over which people have a right and are accustomed to travel, to adopt reasonable precautions to guard the public against such dangerous excavations.
2. A railway company owes to the public the duty to use the proper degree of care to furnish passengers a reasonably safe place to alight, and to use reasonable precaution in the movement of its cars so as not to cause injury.
3. So where a contractor has made a dangerous excavation in a street near the track of the railway, it is the duty of the railway company to see that the excavation is reasonably guarded at or near points where passengers are discharged, and to so operate its cars as not to disturb coverings placed over such excavations.

(Decided January 23, 1920.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Squire, Sanders & Dempsey,* for plaintiff in error.

*Messrs. Cook, McGowan, Foote, Bushnell & Lamb,* for Joseph Ranft, administrator of the estate of Richard E. Berger, deceased.

*Messrs. Snyder, Henry, Thomsen, Ford & Seagrave,* for Gould & Maybach.

CUSHING, J. This cause is heard on error to the court of common pleas, on the petition in error of The Cleveland Railway Company and the cross-petition in error of Gould & Maybach, partners, doing a contracting business as Gould & Maybach.

The action grew out of an accident in East Cleveland, at the intersection of Euclid and Beers-

ford avenues, in front of the railway company's Windermere barns. The contractors were digging a sewer in Euclid avenue. The trench was about five feet wide and fifteen feet deep. The dirt was piled between the trench and the curb. At the point in question there was an open space, through which was a single track of the railway company, as a means of ingress and egress to its barns. The surface of the street was not disturbed between the rails. For a distance of about six or eight feet on each side thereof, provision was made for covering the trench with boards. Their ends, next to the rail on the west side, were counter-sunk to permit the fenders of cars to pass over without interfering with the covering. This track dipped slightly toward the street. It was a sharp curve from the curb to the main tracks on Euclid avenue, and, when coming out, the fenders of the cars extended beyond the rails, over the board covering of the trench.

There was evidence that if the cars came out of the yards at a high speed, their lurch on the curve, together with the drop in the street, caused the fenders to dip and come in contact with the trench covering.

Berger was a passenger from the city of Cleveland, en route to his home, about eight squares east of the place of the accident. On reaching the Windermere yard, the train turned in, dropped the trailer, and, preparatory to continuing its trip east, came out over the track in question at such speed that before it could be stopped it collided with the trailer of another train of the company on Euclid avenue.

Immediately after the collision, the conductor in charge of the car opened the rear door, and, with the conductor from the trailer, got out, leaving the door open. Berger followed and was proceeding south across Euclid avenue when he fell into the open trench and was killed.

The jury returned a verdict of $25,000 against the defendants below. It is sought to reverse that verdict and judgment.

The contractors claim that they are not liable; that there was no evidence against them on which to base the verdict; that Berger was negligent, and that his negligence was the proximate cause of the accident and his death.

It is admitted in the record that Berger lost his life by falling into the open trench, immediately west of the curved track in question.

The testimony of the witnesses is in direct conflict on the following points, viz: the speed of the car coming out of the yard over the curved track; the height of the fenders above the ground, as to whether or not they dipped over the trench; the location of the rear door when Berger alighted from the car; whether the trench was covered on the evening in question, and, if so, by whom, and at whose direction it was removed; whether or not the car was backed before or after Berger alighted from it, and where he was when it backed; which of the conductors, Forsythe or Such, was first to leave the car; whether or not the red light at the location designated by "X," plaintiff's exhibit 12, was burning at the time in question; the number of lights and their proximity to the trench at this

point; and whether Berger alighted from the car north of, on, or south of the sidewalk.

These were jury questions, as were Berger's conduct and the question whether he was in the exercise of ordinary care for his own safety in proceeding across Euclid avenue as he did.

On the claim of the contractors that there was no evidence against them, the undisputed record is that the street at the place of the accident was used by the railway company, by its employes going to and from the barns and shifting trolley poles, and by the public in crossing Euclid to Beersford avenue.

The contractors then owed the duty of making the crossing reasonably safe for the use to which it was put. If the trench was not covered, their duty was to use reasonable care to warn the public, either by lights or barriers. They claim that at quitting time, about 5:15 P. M., they covered the trench with boards and hung red lanterns as a warning. There was some testimony that the trench was not covered at any time until after the accident. It can not be said that the statement of witnesses to that effect establishes such fact as a matter of law, or that the jury would not be authorized to find to the contrary.

The rule is that where contractors in the exercise of their legal right make a dangerous place in a street, over which the public have a right and are accustomed to travel, it is their duty to adopt reasonable precautions to guard the public against such dangerous place in the highway. *The P., F. W. & C. Ry. Co.* v. *Bingham, Admx.,* 29 Ohio St., 364, 368.

It is argued that there was a regular crossing a short distance from the place of the accident, and others at intervals for several squares; that Berger chose a dangerous way, when there was a known safe way to cross the street. The record does not show that Berger knew of the crossings mentioned, nor that the place selected by him was dangerous. The trench had not been there for such length of time that a traveler on a street car passing the location should have known of its existence, or that it created a danger where people were accustomed to use the street. The red light mentioned in the record was hanging on a board some ten feet from the west rail of the track. Was it so placed that it was a warning to persons using the street near the track?

The theory of counsel for the contractors was that they had lawfully made the excavation in the street, and did not owe a duty to cover or protect it.

They cite cases where a pedestrian used a street which was obviously dangerous, when there was a safe way, and the showing that there was a safe way barred recovery. The cases relied upon have reference to snow and ice on the street. *City of Norwalk* v. *Tuttle,* 73 Ohio St., 242; *Schaefler* v. *City of Sandusky,* 33 Ohio St., 246; *Village of Conneaut* v. *Naef,* 54 Ohio St., 529; *Village of Mineral City* v. *Gilbow·et al.,* 81 Ohio St., 263, and *Veite, Admr.,* v. *City of Cincinnati,* 83 Ohio St., 456.

The rule stated in *Norwalk* v. *Tuttle, supra,* was that the petition did not contain an allegation that there was a defective construction or any other act

of the city contributing to or causing the dangerous condition of the street. It was an act of nature, and is distinguishable from the case at bar in that the contractors made the excavation.

In *Derby* v. *Degnon-McLean Contracting Co.,* 98 N. Y. Supp., 592, the plaintiff was injured by stubbing her toe on a board covering a hole in the asphalt, while in this case the size and location of the trench created a dangerous trap in the street. It being shown that the street was used by pedestrians at this point, the contractors owed the duty of protecting the public in the reasonable exercise of a proper use of the street.

In the case of *McDonald* v. *Degnon-McLean Contracting Co.,* 109 N. Y. Supp., 519, the court said:

"Every heedless foot passenger who sought to cross the street at an unusual and unaccustomed place, and under conditions which would render all precautions, short of actual barriers, futile and ineffective," can not hold the contractors liable.

McDonald undertook to cross the street thirty feet from the regular crossing. Berger was proceeding at a used crossing.

The railway company claims that the court erred in refusing to instruct a verdict for it; in refusing to give special charges requested; in its general charge; and that Berger was guilty of negligence that proximately caused the accident and his death.

The liability of the railway company must be determined by the duty it owed Berger as a passenger and as a member of the public. Its duty to him as a passenger was to use the proper degree of care to furnish him a reasonably safe place to

alight. It owed the duty to the public, and to Berger as a member of it, not to operate its cars at excessive speed on the curve so that their fenders would disturb the covering or remove it; and not to order its employes, those of the contractors, or third persons, to remove the covering from the trench, if it was covered, and not replace it. In the management of its cars, if Berger was south of the trench, it owed the duty to use reasonable precaution in the movement of its cars so as not to cause injury. On all these points the testimony is in conflict. On this state of the record it can not be said as a matter of law that the railway company was not negligent. In determining whether it used due care, its acts were questions for the jury. The finding of the jury will not be disturbed as being against the weight of the evidence.

Both defendants in the court below submitted special requests for charges before argument. Of these requests, the following is an illustration:

"I say to you as a matter of law that one who leaves a place of safety and walks into a place of obvious danger, and is injured, does so at his own peril, and he can not recover against the one who is responsible for the creation of the place of injury, even though the same was the result of negligence."

The word "obvious" in this charge assumes that the trench, after dark, was such, and was so lighted that it presented itself, challenging the attention of persons using the street; that it was plainly visible. As pointed out in stating the disputed facts, it would have been misleading to have told the jury that had Berger looked he could have seen and

avoided the trench. The question as to whether he was in a place of safety was not admitted nor established beyond dispute. The rule governing a person leaving a place of safety and assuming a risk has been stated thus: "Whoever voluntarily and unnecessarily encounters a known and easily avoidable peril," etc. *National Machinery Co.* v. *Towne,* 11 Ohio App., 186, and *Schaefler* v. *Sandusky, supra.*

It was not error for the court to refuse to give the special charges. The rule stated covers the objection made to the general charge of the court and that will not be further considered.

On the claim of both the defendants below that Berger was himself negligent, that question was submitted to the jury. This court would not be authorized to hold that a person who walked across the street at a point where it was being used by others, when there was another place some distance away, was guilty of negligence in law.

The judgment of the court below is affirmed.

*Judgment affirmed.*

SHOHL, P. J., and HAMILTON, J., concur.

Judges of the First Appellate District, sitting in place of Judges DUNLAP, VICKERY and WASHBURN of the Eighth Appellate District.