Vernon L. STEPHENSON,
Appellant (Plaintiff),

v.

PACIFIC POWER & LIGHT COMPANY
aka PacifiCorp, a Maine Corporation;
Rand Haapapuro; Weldon Dunn aka
Okie Rowe; Leonard Gradert; and
Danny Foster, Appellees (Defendants).

No. 88–264.

Supreme Court of Wyoming.

Sept. 1, 1989.

Donald P. White and Wesley A. Roberts of White, White & Keenan, P.C., Riverton, for appellant.

Richard E. Day and Richard L. Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellees Pacific Power & Light Co. and Weldon Dunn.

Ward A. White of Guy, Williams, White & Argeris, Cheyenne, for appellees Rand Haapapuro, Leonard Gradert and Danny Foster.

Before CARDINE, C.J., THOMAS, URBIGKIT, and MACY, JJ., and RAPER, J. (Ret.).

MACY, Justice.

Appellant Vernon Stephenson was injured in an industrial accident. He brought suit against several co-employees alleging culpable negligence and against the property owner and one of its employees alleging negligence. The district court granted summary judgment to all defendants.

We affirm in part and reverse in part.

Appellant articulates the following issues:

I. Did the district court err in granting summary judgment for Combustion Engineering co-employees when there existed genuine issues of material fact as to their culpable negligence?

II. Did the district court err in granting summary judgment for Pacific Power & Light and Weldon Dunn a/k/a Okie Rowe when there existed genuine issues of material fact as to their direct liability and/or vicarious liability?

III. Did the district court err in ruling that appellant's conduct precluded recovery against any of the defendants?

We will also address the related issue presented by appellees Pacific Power & Light Company and Weldon Dunn as to whether the district court correctly determined that the actions or inactions of those appellees were not the proximate cause of appellant's injury as a matter of law.

On April 25, 1985, appellant was seriously injured when he fell from a scaffolding upon which he was working at the Jim Bridger Power Plant in Sweetwater County, Wyoming. At the time of the accident, appellant was employed by Combustion Engineering Inc. which had contracted with appellee Pacific Power & Light Company (PP & L), the owner of the plant, to provide certain engineering and maintenance services at the plant.

By initial complaint dated April 2, 1987, and three amendments thereto, appellant brought a personal injury action against Combustion Engineering co-employees Rand Haapapuro, Norm Aisenbrey, Leonard Gradert, and Danny Foster; against PP & L and PP & L employee Weldon Dunn, aka Okie Rowe; and against various John Doe defendants.[1] With respect to PP & L and Weldon Dunn, appellant essential-

---

1. Two John Doe defendants were replaced by named defendants in the amendments to the initial complaint. The final John Doe defendant was never identified and never became a party to this action. *See* note 5, *infra.*

ly alleged that they owed a duty to appellant as an invitee to maintain the building where the accident occurred in a safe condition and that, by failing to flag or barricade the doorway where the scaffolding was located, they breached that duty resulting in appellant's injury. Appellant alleged, with respect to the co-employee defendants, that they failed to respond to repeated complaints and requests to have the doorway flagged or barricaded and that such failure amounted to culpable negligence which resulted in appellant's injury.

After the defendants answered and discovery was conducted, each defendant moved for summary judgment.[2] Memoranda, depositions, and other documentary materials were filed in support of and against the motions for summary judgment.[3] By decision letter and order, the district court granted summary judgment to all defendants. The district court determined that, while the co-employee defendants may have been negligent, there was no evidence that they had engaged in willful or wanton misconduct or that they had possessed a state of mind approaching an intent to do harm and, therefore, they were entitled to summary judgment as a matter of law on appellant's claims of culpable negligence. The basis of the grant of summary judgment to PP & L and Weldon Dunn is less clear, but it appears the district court determined, with respect to the claims against all defendants, that appellant was precluded from recovery by contributory negligence, assumption of the risk, and the obvious danger rule. Additionally, the district court's decision letter can be read as determining that the actions of the defendants were not the proximate cause of appellant's injury as a matter of law.

## SUMMARY JUDGMENT

On appeal from a grant of summary judgment, we review the judgment in the same light as the district court, using the same materials and following the same standards. *Johnston v. Conoco, Inc.*, 758 P.2d 566 (Wyo.1988); *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890 (Wyo.1986). The party moving for summary judgment has the burden of demonstrating that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. *Johnston*, 758 P.2d 566; *Farr v. Link*, 746 P.2d 431 (Wyo.1987). We have defined a material fact as one which, if proved, would have the effect of establishing or refuting an essential element of the claim or defense asserted by the parties. *Johnston*, 758 P.2d 566; *Parker v. Haller*, 751 P.2d 372 (Wyo.1988). We review the record from the vantage point most favorable to the nonmoving party, giving that party the benefit of every favorable inference which may be drawn from the facts in the materials submitted in the record. *Jones*, 718

2. The sequence of procedural events became somewhat convoluted after the third amended complaint was filed. Certain defendants moved for summary judgment, and an initial decision letter was entered before all the defendants had answered and before defendant Danny Foster had even been served with a complaint. By stipulation among counsel for all parties, the affected defendants waived the defects and filed the necessary responsive pleadings and motions so that the decision letter and order granting summary judgment would apply to all named defendants. This was assertedly done to simplify the appeal process for appellant. The final order granting summary judgment notes these irregularities and the curative actions and grants summary judgment to all the named defendants.

3. In addition to the depositions in the record, depositions were apparently taken from Rand Haapapuro, Leonard Gradert, and Norm Aisenbrey, as excerpts from these depositions were quoted in the memoranda in support of summary judgment filed in the district court by the co-employee defendants. These depositions were never made part of the record and were not included in the record on appeal. As a consequence, we granted appellant's motion to strike the entire original appeal brief of PP & L and Weldon Dunn which quoted and relied heavily upon this nonrecord material. PP & L and Weldon Dunn filed an amended brief eliminating all references to the offending material. Similarly, during oral argument we granted appellant's previously filed motion to strike portions of the co-employees' brief which also referred to the nonrecord depositions. This Court will not consider matters not contained in the record, *Mentock v. Mentock*, 638 P.2d 156 (Wyo. 1981), and statements in briefs are not evidence which a reviewing court can consider. *Majority of Working Interest Owners in Buck Draw Field Area v. Wyoming Oil and Gas Conservation Commission*, 721 P.2d 1070 (Wyo.1986).

P.2d 890; *Noonan v. Texaco, Inc.*, 713 P.2d 160 (Wyo.1986). Even if the evidence in the case is not significantly in dispute, if that evidence is subject to differing interpretations or if reasonable minds might disagree as to its significance, summary judgment is not proper. *Fegler v. Brodie*, 574 P.2d 751 (Wyo.1978); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2725 at 106–09 (1983).

## FACTS

With the above standards in mind, we examine the evidence in the record upon which the summary judgment was premised. Most of the following facts are gathered from the depositions of appellant, Danny Foster, and Bill Huebner. Appellant, an experienced ironworker, was hired by Combustion Engineering on April 22, 1985, for work at the Jim Bridger Power Plant. Appellee PP & L, the owner of the plant, had previously entered into a contract with Combustion Engineering by which Combustion Engineering was to perform various technical and engineering services, furnish labor therefor, and perform specified work at the plant. Appellees Rand Haapapuro, Leonard Gradert, and Danny Foster were employees of Combustion Engineering as were Norm Aisenbrey[4] and Bill Huebner. Appellee Weldon Dunn, aka Okie Rowe, was a shop foreman for PP & L at the PSI Building where the accident occurred.

Upon reporting to work at the plant on Monday, April 22, 1985, appellant first met with Rand Haapapuro who briefly instructed appellant regarding safety. Rand Haapapuro was introduced to appellant as a safety engineer. Thereafter, appellant was introduced to his immediate supervisor,

Danny Foster, to Foster's supervisor, Leonard Gradert, and to an unidentified PP & L engineer.[5] Appellant was then informed of his job assignment, which was that he and Bill Huebner were to install a new overhead door at the PSI Building. The PSI Building was a shop in which PP & L, among other things, serviced vehicles used at the plant. The PP & L engineer and appellant went over the shop drawings (i.e., plans/blueprints) which the engineer had prepared regarding the installation of the new door.

Later that day, appellant and Bill Huebner erected a scaffolding inside the door opening and commenced work on the installation of the new door. This door opening was the only vehicle access to the building. The working platform on the scaffolding was approximately fifteen to seventeen feet above the shop floor. An access ladder was built into the scaffolding. The scaffolding was on rollers so that it could be moved, and it had a brake to lock it into place. Some of the equipment used on the job by appellant and Bill Huebner belonged to PP & L, including a cherry picker, a forklift, and perhaps the scaffolding.

Upon commencing work on the scaffolding, appellant and Bill Huebner immediately encountered problems with PP & L vehicle traffic coming into and out of the building. Appellant stated that the vehicles would "come whipping around there and blow the horn or whatever." Bill Huebner stated that for a vehicle coming into the building from the outside it was like driving into a cave. Vehicle traffic approaching from the outside had no warning of the presence of the scaffolding and workmen inside the door. Each time a vehicle approached, appellant and Bill Huebner had to descend from the scaffolding

---

4. Norm Aisenbrey, a party defendant in the action below, was dismissed from this appeal by order of this Court pursuant to a stipulation entered into by the parties. It appears that Norm Aisenbrey was the overall superintendent at the plant for Combustion Engineering. The stipulation dismissing him from this appeal apparently reflects appellant's acknowledgment that there is no evidence indicating Norm Aisenbrey was aware of the alleged safety problems associated with this accident or that he was

even aware of the existence of this particular project.

5. The unidentified PP & L engineer was listed as John Doe, defendant, in the proceedings below. Although extensive discovery was had and appellant repeatedly amended his complaint, the PP & L engineer was never identified or served with process; thus, he never became an actual party to this action.

and move it out of the way. In addition to the inconvenience, appellant stated that he perceived the safety problem.

That Monday appellant communicated to Leonard Gradert and the PP & L engineer the safety problem and the need for a barricade or flagging. The PP & L engineer responded that the door could not be barricaded because of the need for vehicle access, and he refused to commit himself regarding flagging off the door. Appellant and Bill Huebner also discussed the need for flagging with Danny Foster on that Monday. Danny Foster relayed the complaint to his supervisor, Leonard Gradert, who responded that the door could not be shut off but that he would refer the matter to PP & L. Danny Foster also mentioned the problem to Rand Haapapuro. Danny Foster stated that he did not personally assume responsibility for flagging off the door because Leonard Gradert had informed him that this project was to be supervised by PP & L's Weldon Dunn and that he, Foster, was to stay away from it. Similarly, appellant and Bill Huebner had been told, or were under the impression, that they were prohibited from barricading or flagging off the door.

The record indicates this pattern of complaints to Combustion Engineering superiors and to PP & L personnel continued until the time of the injury producing accident, with the same ineffectual buck passing and lack of action on the problem. On Tuesday, April 23, 1985, a PP & L vehicle ran into the scaffolding. It is unclear from the deposition testimony whether either appellant or Bill Huebner was on the scaffolding when it was struck. Although no injuries occurred as a result of this collision, a section of the scaffolding was damaged to the point that it had to be replaced. The materials in the record indicate that Danny Foster, Leonard Gradert, Rand Haapapuro, and the PP & L engineer were all aware that the scaffolding had been struck by a vehicle. During his deposition, appellant was asked if he had informed Leonard Gra-

dert and the PP & L engineer about this incident:

Q. I want to know specifically if you told Leonard and the PP & L engineer about it.

A. Yes, sir. Yes, sir.

Q. What did they say about that?

A. They was sorry, you know, sorry it happened and apologized. They said they would try to correct it.

Q. Did you ask them about the flagging and the flagmen or the barricades?

A. Yes, sir, I told them that we needed a barricade and to have someone out there to watch it.

Q. What did they say about that?

A. They said they would talk about it and try to correct the situation.

Q. Who are they going to talk to? Do you have any idea?

A. I don't know. I guess the PP & L engineer was going to go to his boss and I suppose Leonard was going to go to this Norm fellow.

The deposition testimony indicates that Weldon Dunn, the PP & L shop foreman, controlled the flow of traffic into and out of the PSI Building. He attempted, largely unsuccessfully according to the deposition testimony, to work out an arrangement with appellant and Bill Huebner by which he would schedule several vehicles in the shop at one time in order to minimize the traffic flow. According to appellant, after the collision with the scaffolding on Tuesday, either he or Bill Huebner, upon hearing a vehicle approach, would hurry down the scaffolding to make sure the vehicle stopped. Appellant stated that the fact that he and Bill Huebner were having to hustle down the scaffolding to do their own flagging was communicated to or known by Rand Haapapuro, Leonard Gradert, Danny Foster, and the PP & L engineer.

Appellant's injury occurred on Thursday morning, April 25, 1985.[6] Despite the continuous complaints, the doorway still had

6. The deposition testimony of each deponent indicates some confusion as to whether the accident occurred on Wednesday or Thursday, but it seemed to be resolved that it happened on Thursday, and this is the date indicated on the accident report filed with the Workers' Compensation Division.

not been barricaded or flagged. Appellant stated that several times that morning he had come down the scaffolding to flag cars. On appellant's final such descent he fell off the scaffolding ladder and onto a pile of iron which was lying on the floor, severely injuring his left knee. Appellant said that he had heard a vehicle approaching and that he was hurrying down the scaffolding to prevent the vehicle from colliding with the scaffolding. Appellant was unable to identify exactly what precipitated his fall; i.e., whether he missed a step or a handhold. He stated, "I started down and the next thing I knew I was laying in this pile of iron." Appellant could not say whether or not the vehicle hit the scaffolding, although he testified that Bill Huebner told him it did.

Bill Huebner testified that appellant was hurrying down to stop the car. Bill Huebner further stated that he thought the vehicle bumped the scaffolding, although that might have happened prior to appellant's descent. Neither appellant nor Bill Huebner could say whether the vehicle actually knocked appellant off the scaffolding. Danny Foster testified that he informed Leonard Gradert of the accident and reiterated the need for a barricade or flagging, to which information Leonard Gradert indicated that "he just hadn't got ahold of anybody either yet." Other evidence in the record will be mentioned as it pertains to the discussion of the specific issues.

## CULPABLE NEGLIGENCE

We first address appellant's contention that summary judgment was improperly granted on his claims of culpable negligence against the Combustion Engineering co-employees. At the time of appellant's injury [7] the exclusive remedy provision of the Wyoming Worker's Compensation Act, Wyo.Stat. § 27–12–103 (1977), excepted culpably negligent co-employees from the general grant of immunity to employers and co-employees.[8] That statute, in material part, provided:

(a) The rights and remedies provided in this act [§§ 27–12–101 to –804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment *unless the employees are culpably negligent,* but do not supersede any rights and remedies available to an employee and his dependents against any other person.

(Emphasis added.)

The definition of culpable negligence and the showing required for recovery were set out in our opinion in *Bryant v. Hornbuckle,* 728 P.2d 1132, 1136 (Wyo.1986):

In order to recover against a coemployee under this section of the Worker's Compensation Act, a plaintiff must establish more than simple negligence; the coemployee's conduct must constitute "culpable" negligence. In *Barnette v. Doyle,* Wyo., 622 P.2d 1349, 1362 (1981), we defined the term "culpable negligence" as "willful and serious misconduct." We defined the term "willful" in this context as " 'such as is done purposely, with knowledge—or misconduct of such a character as to evince a reckless disregard of consequences.' " *Id.,* quoting *Hamilton v. Swigart Coal Mine,* 59 Wyo. 485, 143 P.2d 203, 206, 149 A.L.R. 998 (1943).

The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind. In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm. State of mind, of course, may be difficult to prove. Accordingly, courts allow a party to establish that willful misconduct has occurred by demonstrating that an

---

**7.** Worker's compensation provisions in effect at the time of the injury control the rights of the injured worker. *Bemis v. Texaco, Inc.,* 400 P.2d 529 (Wyo.1965).

**8.** Section 27–12–103 was repealed in 1986. The current exclusive remedy provision in the Act, Wyo.Stat. § 27–14–104 (1977), extends immunity to culpably negligent co-employees.

actor has intentionally committed an act of unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow.

(Citations omitted), *quoted in Johnston*, 758 P.2d at 568–69.

■ In the instant case, we are unable to agree with appellant's contention that the conduct of these co-employees surmounted simple negligence and reached the level of culpable negligence. The evidence does indicate that each of the co-employee appellees was in a supervisory capacity in relation to appellant and, under the circumstances, it would appear that these co-employees owed appellant a duty to provide safe working conditions. *See Case v. Goss*, 776 P.2d 188 (Wyo.1989), and *Barnette v. Doyle*, 622 P.2d 1349 (Wyo.1981). Appellant asserts that there is factual dispute as to whether the supervisory co-employees had knowledge of the hazardous situation. The co-employee appellees, however, concede such knowledge for purposes of this summary judgment review. These appellees convincingly argue, nevertheless, that, while their conduct might well have constituted ordinary negligence, it lacked the character of willfulness; i.e., their conduct did not demonstrate a state of mind approaching intent to do harm. The co-employee appellees describe their actions as "ineffectual" and as a "bureaucratic shuffle" wherein each, while never affirmatively refusing to act, repeatedly passed the buck to others they assumed were more responsible. We think this is a fair characterization of the conduct of the co-employees as reflected in the record and, while such conduct may have been less than reasonable under the circumstances, culpable negligence "involves more than unreasonable conduct; it involves willfulness." *Bryant*, 728 P.2d at 1137.

We conclude that the evidence in the record, viewed from the vantage point most favorable to appellant, demonstrates that the co-employee appellees may not have fulfilled their duty to provide appellant with a safe working environment but that the breach of this duty was a matter of negligence at most, and appellant failed to present evidence of culpable negligence. Thus, co-employees Leonard Gradert, Rand Haapapuro, and Danny Foster were entitled to judgment as a matter of law.

## NEGLIGENCE LIABILITY OF PP & L AND WELDON DUNN

In his third amended complaint, appellant alleged that PP & L and its agent/employee, Weldon Dunn, owed appellant, by virtue of his status as a business invitee, a duty of care to maintain the PSI Building in a safe condition and that they negligently maintained an unsafe work environment at the entrance to the building which proximately caused appellant's injuries. As noted previously, it is not clear whether or not the district court considered the nature of any duty that PP & L and Weldon Dunn may have owed appellant or whether such duty was breached, but rather the district court apparently granted summary judgment to these appellees on the basis of absolute defenses and proximate cause. We must initially examine, however, the legal grounds of potential liability of these appellees as the premises owner and its employee; i.e., the nature of the duty that PP & L and Weldon Dunn may have owed to appellant.

In *Jones*, 718 P.2d 890, we noted that a premises owner may be liable to a worker injured on the premises under either of two theories. First, the owner may be liable vicariously for the negligence of the worker's employer under the doctrine of *respondeat superior*. Second, apart from vicarious liability, the owner may be directly liable for his own negligence in connection with the work to be done.

"So far as he in fact gives directions for the work, furnishes equipment for it, or retains control over any part of it, he is required to exercise reasonable care for the protection of others * * *. If the work is done on the employer's own land, he will be required to exercise reasonable care to prevent activities or conditions which are dangerous to those outside of it, or to those who enter it as invitees. In all of these cases, he is liable for his

personal negligence, rather than that of the contractor." (Footnotes omitted.) W. Keeton, Prosser and Keeton on Torts § 71 at 510–511 (1984).

*Id.* at 893–94.

 With respect to vicarious liability, the controlling question is whether or not Combustion Engineering was an independent contractor. If Combustion Engineering was an independent contractor, then PP & L and Weldon Dunn are entitled to rely upon the general rule that the employer of an independent contractor is not liable for the negligence of the contractor unless the employer did not exercise care in the selection of the contractor. *Jones,* 718 P.2d at 898. The premier consideration in determining whether one is an employee or an independent contractor is whether the employer has the right to control the details of the work whereby liability is sought to be established. *Noonan,* 713 P.2d 160; *Combined Insurance Company of America v. Sinclair,* 584 P.2d 1034 (Wyo.1978). Ordinarily this is a question of fact for the jury and becomes one of law only when but one inference can be drawn. *Noonan,* 713 P.2d at 164; *Combined Insurance Company of America,* 584 P.2d at 1042.

 Our review of the record reveals that the evidence is conflicting regarding PP & L's right to control the details of the work performed by Combustion Engineering on this project. The contract between PP & L and Combustion Engineering indicates the relationship is one of owner/independent contractor. The following provisions of the contract address this issue:

*Article 4.1 Independent Contractor*

Contractor is an independent contractor, and all persons employed by Contractor in connection herewith shall be employees of Contractor, and not employees of Company, in any respect.

*Article 4.2 General Supervision*

All work will be subject to general supervision and inspection by a representative of Company, who may exercise such control of the work as is required to safeguard the interests of Company and Owners.

Thus, the contract contemplated that Combustion Engineering would be an independent contractor, and the contractual retention of general powers of supervision as to results by PP & L does not alter that relationship. *See Noonan,* 713 P.2d at 165. Although not conclusive, the contract is a strong indication of the intended relationship. *Id.* Certain deposition testimony, however, presents a different picture from that demonstrated by the contract. Although appellant stated that PP & L did not direct him as to the details of his work, he also stated that it seemed like Combustion Engineering was just a labor broker and that the Combustion Engineering employees had to get PP & L's approval for everything they did. Bill Huebner, in his deposition, discussed the role of Combustion Engineering's foreman, Danny Foster, on the project:

And he [Foster] said that he had nothing to do with it. We were working for PP & L, for Okie Rowe [Dunn] mainly, because I went to him several times and asked him about something on the door or the iron or what. And he says, I don't know. He says, It's not my baby.

Later in the deposition, this exchange occurred:

Q. So this two and a half weeks you are on the job, you knew that the chain of command was from you to Danny Foster?

A. But then Danny Foster told us for—that we had to see Okie or PP & L for whatever we needed.

Q. But you didn't. You continued to see Danny.

A. And Danny said, we—I've got nothing to do with it. You are on our payroll. But you are working for PP & L.

Similarly, Danny Foster testified that Leonard Gradert instructed him that Weldon Dunn would be the boss on this particular job and that he (Foster) was not to get involved in it. Danny Foster further stated that it was unusual for Leonard Gradert to instruct him to stay away from the job, that it had never happened before, and that Weldon Dunn was involved as a hands-on

foreman on this job. Thus, reviewing the record in the light most favorable to appellant, as we must, the evidence as to PP & L's and Weldon Dunn's right to exercise control and the actual exercise of control over the details of the work is conflicting, and clearly more than one inference can be drawn from such evidence. Genuine issues of material fact exist as to whether appellant was the employee of an independent contractor in relation to these appellees on this project. PP & L and Weldon Dunn were not entitled to summary judgment on the issue of vicarious liability.

A somewhat similar analysis applies to the alleged direct liability of PP & L and Weldon Dunn. Again, the right to control the details of the work is a critical determinant. An owner, however, may relinquish enough control so as to preserve or insure the contractor's independent status and yet retain sufficient control to sustain direct liability for his own negligence. *Jones,* 718 P.2d at 895. In *Jones,* we pointed out that, in situations where the owner maintains control over the hazard causing the harm, the owner should not be exempt from liability. This principle is encompassed in *Restatement (Second) of Torts* § 414 (1965), which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Quoted in Jones,* 718 P.2d at 895. Accordingly, we held in *Jones* that

> an owner of a work site who retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the contractor was hired to perform.

*Id.* at 896. *See Brewster v. Salveson Construction, Inc.,* 765 P.2d 1350 (Wyo.1988); *Hill v. Pacific Power & Light Co.,* 765 P.2d

1348 (Wyo.1988); and *Stockwell v. Parker Drilling Co., Inc.,* 733 P.2d 1029 (Wyo. 1987), as recent cases stating and applying the above principle.

Returning to the record evidence in the instant case, we first observe that all the evidence indicating the retention and exercise of control by PP & L and Weldon Dunn recited in connection with the analysis of vicarious liability is applicable to the alleged direct liability of these appellees. Further, although again somewhat conflicting, there is considerable deposition testimony that these appellees exercised control over the hazard—i.e., the flow of traffic into and out of the PSI Building—and that they assumed affirmative duties as to safety. Appellant stated that, on the Monday when he began work, he approached the unidentified PP & L engineer about barricading the door and that the PP & L engineer's response was to the effect that: "Well, we couldn't barricade the door; that they had to have access to get vehicles in and out." Appellant further testified that every time the PP & L engineer came around he (appellant) would bring up the need for some kind of safety measures. Appellant described the PP & L engineer's response as: "Said he would work on it, see what he could do." Appellant also stated that, after the first collision by a PP & L vehicle with the scaffolding, the PP & L engineer apologized and said he would try to take care of the problem.

Similarly, Bill Huebner stated that he and appellant could not themselves put up flagging because they were told that it would interfere with PP & L's traffic, that Weldon Dunn informed them they would have to work around the traffic, and that PP & L would not allow them to block off the traffic. Danny Foster's deposition testimony corroborated Bill Huebner's statement. This evidence demonstrates that there are genuine issues of material fact regarding whether PP & L and Weldon Dunn (1) exercised control over the details of the project as a whole, (2) exercised control specifically over the hazard allegedly causing the harm, and (3) assumed affirmative duties as to safety. PP & L

and Weldon Dunn were not entitled to summary judgment on the question of direct liability of an owner to the employee of an independent contractor.

## PROXIMATE CAUSE

- ██ PP & L and Weldon Dunn argue that, even if they owed a duty to appellant, it can be inferred that the district court found that any negligence by these appellees was not the proximate cause of appellant's injury, and they contend that the district court was correct in this determination.[9] It is not entirely clear that the district court relied upon a lack of proximate cause in granting summary judgment to these appellees. Nevertheless, the evidence in the record indicates the presence of a factual issue precluding summary judgment on this basis.

Proximate cause is the concept "that the accident or injury must be the natural and probable consequence of the act of negligence." *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo.1983), *quoted in Bettencourt v. Pride Well Service, Inc.*, 735 P.2d 722, 726 (Wyo.1987). Proximate cause is normally a question of fact unless the evidence is such that reasonable minds could not disagree. *Buckley v. Bell*, 703 P.2d 1089 (Wyo.1985); *Caterpillar Tractor Company v. Donahue*, 674 P.2d 1276 (Wyo.1983). In *McClellan*, 666 P.2d at 414, we stated that the ultimate test of proximate cause is the foreseeability of injury, and we noted that it is not necessary that the specific injury be foreseen—it is sufficient if a reasonably prudent person would foresee that the same general type of injury would be likely in the absence of adequate safeguards. *See also Endresen v. Allen*, 574 P.2d 1219 (Wyo.1978) (only necessary that defendant should have anticipated some injury or harm might result from his conduct).

██ We have defined legal causation as that conduct which is a substantial factor in bringing about the plaintiff's injuries.

*Buckley*, 703 P.2d at 1091. In that case we said that,

> if the conduct is "that cause which in natural and continuous sequence, unbroken by a sufficient intervening cause produces the injury, without which the result would not have occurred," it must be identified as a substantial factor in bringing about the harm. If, however, it created only a condition or occasion for the harm to occur then it would be regarded as a remote, not a proximate, cause, and would not be a substantial factor in bringing about the harm.

*Id.* at 1092 (quoting *Lemos v. Madden*, 28 Wyo. 1, 10, 200 P. 791 (1921)), *quoted in Bettencourt*, 735 P.2d at 726. An intervening cause is one which occurs subsequent to the defendant's negligent act or omission, and an intervening cause will generally relieve a defendant from liability if it was unforeseeable. *McClellan*, 666 P.2d at 414; *Fagan v. Summers*, 498 P.2d 1227 (Wyo.1972). A foreseeable intervening cause, however, will not relieve a tort-feasor from liability. *McClellan*, 666 P.2d at 414.

With respect to proximate cause, PP & L and Weldon Dunn argue the following: The evidence is equivocal as to whether a vehicle struck the scaffolding at the time of appellant's injury, but, in any event, the testimony indicates that, even if the scaffolding was bumped by the vehicle, it happened before appellant began his descent and, therefore, appellant was not knocked off the scaffolding by the incoming vehicle; that, even if a barricade or flagging had been in place, appellant would have had to climb down the scaffolding to move it out of the way; and that, consequently, the lack of flagging or a barricade was not the proximate cause of appellant's injuries, but rather appellant's own actions proximately caused his injuries. Although this characterization of the evidence by PP & L and Weldon Dunn is accurate as far as it goes, it does not paint a complete picture. Furthermore, we do not agree with the legal conclusion which these appellees insist

---

**9.** The Combustion Engineering co-employees raise a similar argument in their brief, but our holding on the question of culpable negligence regarding those appellees precludes the necessity of addressing their proximate cause argument.

flows inevitably from such evidence. This Court has stated that, even where the evidence is undisputed, the question of proximate cause is for the trier of fact if different inferences might be drawn from such evidence. *Bettencourt*, 735 P.2d at 726; *O'Malley v. Eagan*, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582 (1931).

As appellant points out, there is evidence in the record that appellant, after the Tuesday collision of a vehicle with the scaffolding, adopted the practice of hurrying down the scaffolding to stop approaching vehicles and prevent them from striking the scaffolding. More importantly, both appellant and Bill Huebner repeatedly stated that, at the time of the accident, appellant was doing that very thing; i.e., hurrying down the scaffolding to stop the approaching vehicle. Clearly the evidence in the record would permit the inference that appellant's injury was the natural and probable consequence of the failure of these appellees to control the flow of traffic through the doorway.

We agree with appellant that the fact that the vehicle apparently did not knock him off the scaffolding is not controlling, and neither is the fact, also relied upon by these appellees, that appellant as a matter of course was required to descend and move the scaffolding many times a day. The evidence indicates that appellees' inaction on the safety problem forced appellant to hastily descend the scaffolding in a manner he would not otherwise have done. We conclude that reasonable minds could disagree as to whether the allegedly negligent failure of PP & L and Weldon Dunn to barricade or flag off the entrance to the building was a substantial factor in bringing about appellant's fall from the scaffolding. Thus, proximate cause represents an issue for the trier of fact.

Similarly, to the extent appellant's own actions may have operated as an intervening cause, the foreseeability of those actions is a question for the trier of fact. We have stated that an intervening cause is "reasonably foreseeable if it is a probable consequence of the defendant's wrongful

act or is a normal response to the stimulus of the situation created thereby." *Buckley*, 703 P.2d at 1092. In addition, if appellant was negligent and such negligence contributed to his injuries, the trier of fact must balance the respective negligence of the parties, if any, under comparative negligence principles. This aspect of the case will be discussed more fully in the succeeding section of this opinion. Summary judgment for PP & L and Weldon Dunn cannot be sustained premised upon a lack of proximate cause.

## ASSUMPTION OF THE RISK/OBVIOUS DANGER

■ As a final issue, appellant argues that the district court erroneously applied assumption of the risk and the obvious danger rule as a complete bar to recovery. We agree. PP & L and Weldon Dunn do not address this issue on appeal, and it might be assumed they have conceded it.[10] Nevertheless, we will consider the issue briefly.

Distinctions between assumption of the risk and contributory negligence have not been recognized by this Court. *Barnette*, 622 P.2d at 1361; *Brittain v. Booth*, 601 P.2d 532 (Wyo.1979). Before the enactment of the comparative negligence statute, Wyo.Stat. § 1–1–109 (1977), contributory negligence, and assumption of the risk as included therein, was an absolute defense to a negligence action. *Barnette*, 622 P.2d at 1361; *Brittain*, 601 P.2d at 534. With the advent of comparative negligence legislation, however, assumption of the risk, as a form of contributory negligence, became a basis for an apportionment of fault and no longer operated as a complete bar to recovery. *Barnette*, 622 P.2d at 1361; *Brittain*, 601 P.2d at 534. Thus, if appellant was negligent, it was for the jury to measure the relative degrees of fault.

Our recent decisions with respect to the obvious danger rule compel a similar conclusion. In *O'Donnell v. City of Casper*, 696 P.2d 1278 (Wyo.1985), we addressed

**10.** The Combustion Engineering co-employees similarly did not address this issue.

the impact of comparative negligence on the obvious danger rule, concluding that those situations wherein the obvious danger rule operates to negate a duty on behalf of the property owner—i.e., operates as an absolute bar to recovery—were narrowly limited to dangers presented by naturally existing conditions, particularly accumulations of ice and snow. We held in *O'Donnell* that, where the plaintiff in that case encountered an obviously dangerous condition created by the municipal defendant, the negligence of the plaintiff was to be compared to the negligence of the defendant. We stated in that case: "Gone are the days when a scintilla of negligence by the plaintiff will bar recovery." *Id.* at 1284.

In *Jones*, 718 P.2d at 897–98, we quoted from *O'Donnell* and noted the limited application of the "no duty" obvious danger rule:

> Under the obvious-danger rule, an owner of property has no duty to his invitees "to correct an obvious and known danger resulting from natural causes." *O'Donnell v. City of Casper*, Wyo., 696 P.2d 1278, 1282 (1985); see also Note, *The Obvious Danger Rule—A Qualified Adoption of Secondary Assumption of Risk Analysis*, 21 Land & Water L.Rev. 251 (1986). *But the obvious-danger rule does not apply when a dangerous condition is created by the owner or his servants. O'Donnell v. City of Casper, supra*, at 1283.

(Emphasis added.) Thus, we held in *Jones* that, even if the danger created by the defendant property owner was perfectly obvious to the plaintiff, it was the jury's function under the comparative negligence statute to compare the plaintiff's negligence with that of the defendant. *Jones*, 718 P.2d at 898. The same is true in the instant case. To the extent the district court relied upon assumption of the risk and the obvious danger rule in granting summary judgment to PP & L and Weldon Dunn, it was in error.

To summarize, we hold that appellant failed to demonstrate a genuine factual issue with respect to the culpable negligence of co-employees Rand Haapapuro, Leonard Gradert, and Danny Foster, and the summary judgment for those appellees is affirmed. Alternatively, the record does disclose genuine issues of material fact as to the negligence of appellees PP & L and Weldon Dunn, and, therefore, we reverse the summary judgment entered in favor of those appellees.

Affirmed in part, reversed in part, and remanded for further proceedings.