Kelly L. POOL and Corrina Pool, husband and wife, Appellants (Plaintiffs),

v.

DRAVO COAL COMPANY, a Delaware Corporation; and Union Pacific Minerals, Inc., formerly Rocky Mountain Energy Company, a Utah Corporation, Appellees (Defendants).

No. 89-167.

Supreme Court of Wyoming.

March 15, 1990.

Ford T. Bussart and John D. Rossetti of Greenhalgh, Bussart, West & Rossetti, Rock Springs, and Lisa A. Botham, Green River, for appellants.

Patrick Dixon of Murane & Bostwick, Casper, and Catherine MacPherson of Johnson, MacPherson & Noecker, Rawlins, for appellees.

Stanley K. Hathaway of Hathaway, Speight & Kunz, Cheyenne, and Pamela L. Jacklin and Tracy Pool Reeve of Stoel, Rives, Boley, Jones & Grey, Portland, Or., for amicus curiae Bridger Coal Co.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

The issue before us is whether a partnership employee who has received worker's compensation benefits for a work-related injury may maintain a tort action against an individual partner which contracted with the partnership employer to manage the partnership's day-to-day operations.[1] The

---

1. Bridger Coal Company filed an amicus curiae brief with the issue:

Are all members of a partnership or joint venture, as well as the partnership or joint venture itself, the employer of all employees working in pursuit of the partnership's or joint venture's business for purposes of the Wyoming Worker's Compensation Act?

resolution of this issue turns on whether a managing individual partner is an employer entitled to immunity from an employee's tort action under the Wyoming Worker's Compensation act or an independent contractor potentially liable to such action.

Kelly L. Pool (Pool), an employee of Carbon County Coal Company (CCCC), received injuries on November 30, 1984, in a mining accident at his employer's underground coal mine near Hanna, Wyoming. He received worker's compensation benefits through his employer's statutory account established under the Wyoming Worker's Compensation Act. CCCC, a Colorado general partnership, was formed by partners Dravo Coal Company (Dravo), a Delaware corporation, and Union Pacific Minerals, Inc. (UPMI), formerly Rocky Mountain Energy Company (RMEC), a Utah corporation. Although Pool received worker's compensation benefits through the partnership's statutory account, he filed a tort action against the individual partners, Dravo and UPMI, as well as individual defendants, seeking money damages for his personal injuries. His theories of recovery were negligence, culpable negligence, strict liability, and corporate negligence. His wife sought damages for loss of consortium.

The Pools appeal from the trial court's order granting summary judgment for Dravo under a proper W.R.C.P. 54(b) certification.

We affirm.

■ In *Brebaugh v. Hales*, 788 P.2d 1128 (Wyo.1990), a case of first impression, we held that an individual partner enjoys the same immunity as the partnership from suit by an injured partnership employee who has received worker's compensation benefits through the partnership's contribution. That decision was the logical result of our holding in *Hays v. State, ex rel. Workers' Compensation Division*, 768 P.2d 11 (Wyo.1989), adopting the aggregate theory of partnership, namely, "[a] partnership is not an entity separate from its partners. 1C A. Larson, *Workmen's Compensation Law*, at § 54–31. Therefore, since the partnership is nothing more than the

aggregate of the individuals making it up, a partner-employee would also be an employer." *Hays*, 768 P.2d at 14.

*Brebaugh* involved the same partnership in issue here. In that case, the injured employee failed to present the partnership agreement and management contract executed by the partnership and Dravo in a timely manner for the summary judgment decision. Here, however, that partnership agreement and management contract are properly before us. Indeed, Pool precisely relies on those very contract documents in urging us to reverse the trial court's summary judgment.

Dravo and Pool agree that Pool was a partnership employee who received worker's compensation benefits from that employer's statutory account, thus entitling that employer to immunity from the present tort action. Further, they agree that this court must answer the issue at hand by deciding whether the effect of that management contract is to strip Dravo of the tort immunity it would otherwise enjoy. In *Brebaugh*, we said that unless an individual partner has contracted away the management powers of the employer, he is as much the employer as anyone can be. Here we must examine the contract documents to see whether in them Dravo contracted away its employer's powers of management.

Pool asserts that Dravo is a third party from whom he and his wife may seek tort damages, and not a statutory employer cloaked with immunity, because the management contract made Dravo an independent contractor which owed safety duties to the partnership's employees separate and apart from the safety duties owed to them by their statutory employer. We disagree.

As we examine the partnership agreement and the management contract, we are mindful that, "While it is true that a contract is not conclusive evidence of the status of the relationship between the parties, it is a strong indication of the intended association." *Noonan v. Texaco, Inc.*, 713 P.2d 160, 165 (Wyo.1986). The overriding

consideration in establishing independent contractor status is whether or not the employer can control details of the work giving rise to potential liability. *Id.* at 164.

In 1978, Dravo and UPMI's predecessor in interest, RMEC, executed a written partnership agreement creating CCCC, a Colorado general partnership. In that agreement, the partners specifically referred to a written management contract between CCCC, the partnership, and Dravo, one of the partners. The parties executed the management contract the same day as the partnership agreement was executed.

Under the provisions of the partnership agreement, the partnership's business was to acquire, develop, and conduct underground coal mining operations on lands as to which UPMI (RMEC) owned mining rights. Dravo bore 56.5 percent and UPMI (RMEC) bore 43.5 percent of the initial funding of $45 million required for fixed assets, mine development, and railroad spur track. For working capital needs beyond that first $45 million, the partners shared equally. Each partner would recoup its share of that initial funding from partnership profit in proportion to each partner's initial outlay. As to all other partnership profits, issues, and expenses, the partners shared equally.

The partners had equal management rights which were exercised through a management committee. Each partner had two representatives on that committee. Dravo had the general charge of the conduct of the day-to-day partnership operations subject to the supervision and control of the management contract and the management provision of the partnership agreement. The partnership's management committee appointed the partnership's chief operating officer, called a general manager, who was responsible and reported to Dravo. The general manager had charge and control of the mine's day-to-day operation. The partnership paid as a partnership expense the compensation due Dravo as managing partner under the management contract.

Under the provisions of the management contract, Dravo supervised the operation and maintenance of the underground coal mine and performed all functions and services normally required for that operation and maintenance. In return for Dravo's management, the partnership paid Dravo a $500,000 annual management fee. In performing its management work Dravo:

▲ hired and fired the partnership's employees;

▲ acquired all property and assets required to conduct the partnership's business;

▲ paid the partnership's direct costs and expenses from the partnership's funds;

▲ obtained and maintained insurance coverage for the partnership's operations at the partnership's expense;

▲ complied with federal and state laws concerning compensation, social security, and unemployment benefits at the partnership's expense;

▲ made the partnership's business expenditures at the partnership's expense;

▲ protected the surface owners' lands against and paid damages resulting from the partnership's operations;

▲ prepared and submitted to the partnership operations reports, production programs, financial plans and budgets, and production and inventory reports;

▲ performed the partnership's operations diligently in accordance with generally accepted standards of the mining industry and partnership-approved programs;

▲ advised the partnership about operations and reserves development; and

▲ performed the partnership's administrative services.

In our judgment, the management contract does not establish an independent contractor relationship between Dravo and CCCC. To the contrary, the contract establishes Dravo as the managing or operating partner whose management duties are subject to and performed in the name of the partnership. We have no hesitation in concluding that the duties performed by Dravo under the management contract are the essence of the employer's duties. W.S. 17–13–401(a)(v) (June 1987 Repl.) specifically allows the partners to enter into agreements concerning their management rights

in relation to the partnership. "As to the right to participate in management, the partners may concentrate management power inter sese in one or more managing partners." II A. Bromberg & L. Ribstein, *Bromberg & Ribstein on Partnership* § 6.03(b), at 6:39–6:40 (1988).

■ The Pools claim, however, that the annual fee paid by CCCC to Dravo contravenes the requirement that "No partner is entitled to remuneration for acting in the partnership business * * *." W.S. 17–13–401(a)(vi). This statutory provision, however, like the provision relating to partners' management rights, is subject to a contrary agreement between the partners. W.S. 17–13–401(a). Commenting on this point, Bromberg and Ribstein inform us, "The basic rule is often altered by express agreement." II A. Bromberg and L. Ribstein, *supra*, § 6.02 at 6:28, and see cases cited.

■ The Pools urge us to treat individual partners as separate entities from the partnership, inviting us to apply the parent corporation/subsidiary corporation rationale found in *Stratman v. Admiral Beverage Corporation*, 760 P.2d 974 (Wyo.1988), and *Fiscus v. Atlantic Richfield Company*, 742 P.2d 198 (Wyo.1987). We reject that invitation. We made clear in *Hays* the fundamental legal difference between a corporation and a partnership:

> A corporation has a separate legal existence, distinct from its officers. The corporation, as separate entity is the employer, and the officers are employees [Citation.] The partnership, however, is fundamentally unlike a corporation. A partnership is merely the aggregate of the individuals comprising it, and is not an entity distinct from its members.

*Hays*, 768 P.2d at 16.

In conclusion, we hold that a partnership employee who has received worker's compensation benefits for a work-related injury may not maintain a tort action against an individual partner who manages the partnership's day-to-day operations under a contract with the partnership. The managing partner is an employer for purposes of the immunity provisions of the Wyoming Worker's Compensation law.

Affirmed.

URBIGKIT, Justice, dissenting.

I dissent for essentially the same reasons offered in *Brebaugh v. Hales*, 788 P.2d 1128 (Wyo.1990). I would hold Dravo Coal Company is not entitled to that summary judgment as a matter of law. *Stephenson v. Pacific Power & Light Co.*, 779 P.2d 1169 (Wyo.1989); *Cordova v. Gosar*, 719 P.2d 625, 634–40 (Wyo.1986).

Beyond that, I also differ with the majority's statement that W.S. 17–13–401(a)(v) (June 1987 Repl.) "specifically allows the partners to enter into agreements concerning their management rights in relation to the partnership." W.S. 17–13–401(a)(v) (June 1987 Repl.) provides "[a]ll partners have equal rights in the management and conduct of the partnership business," which subparagraph is subject to the initial clause of the section which, in predominating effect, states: "subject to any agreement between them, * * *." W.S. 17–13–401(a) (June 1987 Repl.). It is an external agreement made here, not between the partners, but by the partnership with a contractor, albeit a partner, that is involved in this case as the actual business relationship.

My primary difficulty, however, is with the pathway to decision taken by the majority. The argument for decision comes in segments which seem disconnected and for that reason does no work in logical conclusion to sustain the holding. We are told the overriding consideration in establishing independent contractor status is whether or not the employer can control details of the work giving rise to potential liability. Then we are told the "partners had equal management rights which were exercised through a management committee" when they contracted away any equality of management and paid Dravo Coal Company $500,000 per year to be a contractor and, as such, to "perform[ ] all functions and services normally required for [management]." Finally, we learn that Dravo Coal Company cannot be an indepen-

dent contractor because we *hold* a managing partner is an employer. The syllogistic quality escapes me.

While I agree partners typically are not distinct from the partnership, *Hays v. State ex rel. Wyoming Workers' Compensation Div.*, 768 P.2d 11 (Wyo.1989), I would not agree a corporate entity, such as Dravo Coal Company, can never, by separate provisions or agreement, acquire an identity beyond that of a partner. In this case, it did by a written management contract.

In application of an entity analysis which recognizes the separate contractor creation of the parties by their written agreement, I respectfully dissent from the summary judgment contrarily granted.