The **HOME INSURANCE COMPANY,**
**Appellant (Plaintiff),**

v.

**ELSTON EQUIPMENT COMPANY,**
**Appellee (Defendant).**

No. 90–208.

Supreme Court of Wyoming.

May 9, 1991.

Mark L. Carman of Williams, Porter, Day & Neville, P.C., Casper, for appellant.

William M. McKellar of Boley & McKellar, P.C., Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Home Insurance Company (Home Insurance) appeals from summary judgment granted to Elston Equipment Company (El-

ston) on Home Insurance's strict liability and negligence claims for property damage arising from a tractor-trailer fire. The trial court determined no genuine issues as to any material fact existed and Elston was entitled to summary judgment as a matter of law. The sole issue on appeal is whether the summary judgment was properly granted. Finding an issue of material fact exists, we reverse and remand.

## FACTS

This case arises from a fire in a semi-tractor trailer outside of Buffalo, Wyoming, on May 1, 1986. Marten Transport had contracted with Russell Trucking to deliver a cargo of Monsanto Landmaster herbicide from Billings, Montana, to Greeley, Colorado. A portable propane heater, manufactured by Elston, was rented from Molerway Freight Lines, Inc. to protect the cargo from freezing. In the past, the heater had been serviced by Texas Eastern d/b/a/ Petrolane Gas Service.

To insure a stable temperature during the trip, the heater was placed on a wooden pallet in the right front of the trailer with the cargo containers filling the rest of the truck. The heater thus sat against the front trailer wall, held in place by pressure from a screw-type jack.

En route to Colorado, driver Keith Daniels saw smoke and a brown spot on the front of the trailer. He pulled over and upon opening the trailer door saw smoke and flames in the front of the trailer. The cargo was destroyed, the trailer damaged, but the heater was salvaged structurally intact. It was fire damaged, with burn patterns on the right side where the supply hose connected the propane bottle compartment to the heater control.

## SUMMARY JUDGMENT

On appeal from a grant of summary judgment, we review the judgment in the same light as the district court, using the same materials and following the same standards. The party moving for summary judgment has the burden of demonstrating that no genuine issues of material fact exist and that he is entitled to

judgment as a matter of law. We have defined a material fact as one which, if proved, would have the effect of establishing or refuting an essential element of the claim of defense asserted by the parties. We review the record from the vantage point most favorable to the nonmoving party, giving that party the benefit of every favorable inference which may be drawn from the facts in the materials submitted in the record. Even if the evidence in the case is not significantly in dispute, if that evidence is subject to differing interpretations or if reasonable minds might disagree as to its significance, summary judgment is not proper. *Stephenson v. Pacific Power & Light Company*, 779 P.2d 1169, 1171 (Wyo.1989) (citations omitted).

■ With our standard of review in mind, we must remember that until the moving party has established with its supporting evidence that there are no genuine issues of material fact requiring a trial, the nonmoving party has no obligation to support his pleadings with any evidence. *Matthews v. Wyoming Department of Agriculture*, 719 P.2d 216, 220 (Wyo.1986).

## DISCUSSION

■ In its complaint, Home Insurance alleged that Elston negligently manufactured the heater and that the heater caused the fire. In its strict liability claim, Home Insurance alleged Elston was engaged in the business of selling heaters, the subject heater reached the user without substantial change in condition from when it was sold, and the heater was in a defective condition that was unreasonably dangerous to the user and his property.

In support of Elston's motion for summary judgment, Elston relied principally on certain portions of the deposition testimony of Home Insurance's expert witness Dick Thatcher. Elston admitted that it manufactured and sold the heater and, so far as we can tell from the record and argument of counsel, did not challenge the allegation that the subject heater reached the user without substantial change in condition.

As a result, Elston focused its motion on establishing, through Thatcher's deposition, no genuine issues of material fact existed concerning whether Elston negligently manufactured the heater and whether the heater was in a defective condition that was unreasonably dangerous to the user. We shall review Thatcher's testimony in that context.

In his deposition testimony, Thatcher described his area of expertise as a consultant in litigation involving gas fires and explosions. He stated that in general terms he is knowledgeable about propane heaters and he investigates and reconstructs accidents involving propane fires and explosions. After investigating this fire and examining the heater and the supply hose, he prepared a report containing his findings and opinions concerning the cause and origin of the fire.

In Thatcher's opinion there was a small gas leak in the gas line between the propane bottle compartment and the heater control. It was his belief that injury developed "prior to this incident." He stated he had no certain way of knowing when the hole developed; it was more likely that the hose failure developed over a period of time. In his opinion, "the hole very possibly occurred as a result of injury to the inner liner of the hose at some previous time when it was assembled."

Thatcher described the hose as being about a foot long, with barbed fittings at each end and consisting of two layers of rubber with fabric in between. He explained that Underwriters Laboratories (UL) publishes an approved method for placing the barbed end fittings into the hose. The attachment of UL's tinfoil-like metal band on the supply hose signifies the hose is UL approved. According to Thatcher, there was no UL band attached to the heater hose in question; therefore, he assumed the hose assembly may not have been done under a quality controlled system. It was his opinion that if the inner layer or liner is damaged during assembly, then the outer layer is the only surface that keeps the hose from leaking. If the outer layer is damaged or deteriorates, a leak will then occur.

Thatcher pointed out that he was not allowed to remove the hose from the heater and more closely examine it. Since he was not allowed to do that, he has no evidence to support his opinion, other than the physical evidence he could visually observe by looking at the hose with his naked eye aided by a magnifying glass. In his opinion, the hose failure occurred due to the possibility it was damaged during assembly, combined with progressive deterioration from aging and heat from the burner positioned nearby.

Elston's counsel elicited testimony from Thatcher that he is not an expert in the area of design and manufacture of cargo heaters and does not have an opinion on whether or not the subject heater was designed or manufactured in a negligent or improper manner. Thatcher also testified that he does not know whether the hose was even assembled by Elston. He conceded he has no evidence to prove that damage to the hose occurred when it was assembled by Elston.

Elston maintains that Thatcher's testimony establishes that no genuine issues of material fact exist concerning the negligence and strict liability claims. To be more specific, Elston maintains Thatcher's testimony shows that Home Insurance has no evidence to support its allegations of negligence and strict liability. Viewing Thatcher's testimony in the light most favorable to Home Insurance, we disagree with Elston's contentions. At best, all that Elston accomplished in Thatcher's deposition was discovery of Thatcher's opinions, or absence thereof, and the evidence, or lack thereof, which supports those opinions. In that regard, Thatcher explained that since he had not been allowed to disassemble the hose, examine and test it, he did not have certain evidence to support his opinions. We do not believe that a non-movant can be deprived of access to evidence and then, in defending against summary judgment, face the assertion that he has no evidence to support the complaint allegations.

That point aside, Elston's discovery of Thatcher's opinions and evidence or lack of

opinions and evidence falls short of showing that Home Insurance has no evidence to support its allegations that Elston negligently manufactured the heater or that Elston's heater was in a defective condition.

We find missing from Elston's summary judgment materials any evidence refuting those central allegations. In particular, Elston has not presented any material, by deposition testimony, affidavit, admissions, answers to interrogatories, or otherwise, which shows that Home Insurance has no evidence to support its allegations. Whatever deficiencies may have been revealed in Thatcher's deposition, Elston has failed to demonstrate the absence of genuine issues of material fact about Home Insurance's allegations that Elston failed to exercise care in manufacturing the heater and that Elston's heater was in a defective condition. Until Elston carries that initial burden Home Insurance need do no more than rest on its complaint allegations. According to the summary judgment analysis in *Cordova v. Gosar,* 719 P.2d 625, 634 (Wyo. 1986), Elston's motion has failed to provide substantively sufficient materials to initially support its motion.

Thatcher may have only limited opinions; he may lack evidence to support those few he has formed, whether due to his failure to gather evidence or the action of others to deny him access to objects where that evidence may be found. Elston may or may not have discredited Thatcher's opinions in part or in entirety. The net result of that attack merely places the parties where they have always been before trial— relying on their pleadings. Home Insurance alleges negligence and strict liability and Elston denies those allegations. All Elston has done in discovering Thatcher's opinions or lack of opinions is to arm itself with ordnance to attack him at trial. Thatcher's credibility remains for the trier of fact to determine. Elston has not shown us, in this summary judgment setting, whether Thatcher's testimony is the only evidence on which Home Insurance will rely at trial.

Finding that Elston has failed to establish the nonexistence of genuine issues of material fact relating to Home Insurance's negligence and strict liability allegations, we reverse the summary judgment and remand for further proceedings consistent with this opinion.