MOORE, APPELLANT, v. GEIGER, APPELLEE.

(No. 1040—Decided March 30, 1966.)

*Mr. John L. Roof*, for appellant.
*Messrs. Smith, Kerns & Heydinger*, for appellee.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Logan County entered for the defendant in a negligence action pursuant to a verdict directed at the close of the plaintiff's evidence. Plaintiff having died following the perfection of this appeal, the action has been revived in the name of her personal representative.

It is undisputed in evidence that the defendant contractor, while in the process of replacing an old section of public sidewalk in front of a restaurant located on the south side of the

principal street running in an easterly and westerly direction through the business section of Lakeview, Ohio, had, prior to 2 p. m. on May 1, 1962, poured and troweled new concrete, completing that work early the same day; that to hold the forms along the curb line he had placed a number of cement blocks and at each end of the new construction had placed as a barricade a 2 x 4-inch board elevated above the level of the sidewalk; that the north end of the 2 x 4 barricade at the west end of the construction rested on top of a vertical cement block and the south end rested on one of the steps leading into a tavern; that the 2 x 4 used for the westerly barricade had been previously used in connection with the contractor's business and no longer had the natural color of new lumber; that at a point east of that barricade the contractor had constructed a ramp over the new concrete leading from the street to the entrance of an adjoining restaurant, using new and naturally-colored lumber for such purpose; that at about 2 p. m. on that day the plaintiff picked up some shoes at a repair shop located on the same side of the street, the entrance to which was approximately 40 feet west of the 2 x 4 barricade; that she then left the shoe shop, went "down the steps onto the sidewalk," "glanced into the shoe bag to see the shoes," "closed the bag," and "started walking down this sidewalk to the east"; that she "walked a few steps," "saw construction [the ramp] in front of Pickering's, leading into Pickering's," "took a few more steps and * * * tripped over something [the 2 x 4 barricade]," "fell across it and lit on the cement," injuring herself; that the plaintiff did not see the 2 x 4 barricade until after she fell; that later on she and the town marshal were able to see same from the entrance to the shoe repair shop; that it had stopped raining early that morning and was not raining at the time of plaintiff's fall; that after the fall a mark, apparently made by the 2 x 4, was observed at a point twelve inches up plaintiff's leg; that the 2 x 4 was not flagged, lighted, or otherwise marked; and that plaintiff was at about the middle of the sidewalk when she fell.

The height of the north end of the 2 x 4 barricade was disputed, there being some testimony that the vertical block upon which the board rested was itself resting upon a horizontal

block resting upon the street, some that the vertical block was itself resting upon the street, and some that the vertical block was resting upon the sidewalk. Dependent upon which testimony was believed, the bottom side of the north end of the 2 x 4 would have been either nine inches, sixteen inches, or seventeen inches above the level of the sidewalk. The height of the south end of the two-by-four barricade was also disputed, there being some testimony that it was resting upon the top step of the tavern steps and other testimony that it was resting upon the middle of the tavern steps. In the former event its bottom side would have been thirteen inches above sidewalk level, and in the latter event it would have been seven inches above sidewalk level.

Defendant contractor testified that the 2 x 4 "wouldn't have had concrete on it," "it might have had some stain on it," and that if you just walked along the sidewalk normally it would not "blend right in." Mr. Brodnick, an employee of defendant who helped erect the barricade, testified that the 2 x 4 "wasn't black that you couldn't see it, and it had cement but not cement we used," "it was old cement" of whitish color; that though the day started "dark, dingy, * * * and looked like rain," "around eight-thirty it got pretty nice" and was "pretty nice" at two o'clock; and that the south end of the 2 x 4 rested on the top tavern step. Mr. Mallory, another employee of defendant, testified that the south end of the 2 x 4 rested on the top step of the tavern; that he didn't know "how much cement, concrete or discoloration was on this 2 x 4"; and that "it couldn't have blended with the concrete," for "if it had been used * * * in any concrete it would have been whitish," whereas "concrete has greenish tint until it sets up and bleaches."

The town marshal testified that the 2 x 4 in question was a piece of lumber that had been used at sometime or another on concrete work because it was discolored with concrete"; that "at the time of my observation [it was] on the middle step of the tavern and the end out in the street was on the end of [one] up-turned cement block" resting on the street; that in his judgment it was eight or nine inches above the sidewalk; that "in my observation the barricade blended into the concrete" from

"it was slightly hazy day and concrete drying out has uneven appearance and color and the lumber discolored being wood has uneven color, that is the only term I can think of, the color would blend—the color would correspond"; and that the two-by-four was grey in color.

Plaintiff testified that she didn't see the 2 x 4 because "it was low and there was no flares and no lights"; that "it had been used with cement," was "grey in color"; that "the 2 x 4 blended in with the cement"; that the north end of the 2 x 4 rested on a cement block which in turn rested on the street; that the only thing which she saw or which attracted (or distracted) her attention were the "planks or boards leading into the Pickering Restaurant"; and that it looked like old cement on the 2 x 4 with the top "grey with cement" and the side "grey in color."

Plaintiff's assignments of error may be summarized that the trial court committed error prejudicial to plaintiff in directing a verdict in defendant's favor and in overruling plaintiff's motion for a new trial.

The duty of a trial court in a jury trial on a motion to direct a verdict is set forth in *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St. 469, as follows:

"3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.

"4. Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

Thus, if on the evidence here, so construed, reasonable minds could conclude *only* that the defendant was not actionably negligent *or* that the plaintiff was contributorily negligent the trial court's judgment must stand. Conversely, if reasonable minds could also conclude that the defendant was ac-

tionably negligent and the plaintiff not contributorily negligent the judgment must be reversed.

As to defendant's negligence, if any, it should first be observed that this is not the ordinary case of a municipality being sued for damages for injuries resulting from a defect in the sidewalk structure itself, but is the case of a contractor being sued for damages for injuries resulting from a barrier to public travel, which he erected on a public sidewalk. As stated in 40 Corpus Juris Secundum 288, Highways, Section 252b, which is applicable as well to sidewalks along highways:

"The primary duty rests on a highway contractor to exercise reasonable care for the safety of the general public while it is traveling over a road on which he is working, * * * and he may be held responsible for damage resulting from his negligence or malfeasance in connection with defects and obstructions in the highway, as in the case of his negligence in respect of barriers, railings, and other guards or danger signals * * * ."

Compare, *Strong* v. *Pickering Hardware Co.,* 9 C. C. 249, 2 O. D. 460, 6 C. D. 212, and *Cleveland Ry. Co.* v. *Ranft, Admr.,* 12 Ohio App. 397, 400.

In 40 Corpus Juris Secundum 310, Highways, Section 262, it is also stated:

"*Sufficiency of barrier, guard, or signal.* The barriers, railings, guards, or signals should be sufficient reasonably to warn and protect travelers on the highway, in the exercise of reasonable care * * * .

"A barrier or guard railing should be so constructed that it may be readily seen at a safe distance by ordinary observation; * * *. It should be such a barrier or railing as an ordinary man would maintain to make the road reasonably safe for the reasonable use of the traveling public under the circumstances * * * ."

Although the law, as so stated, has been developed with application primarily to the determination of whether a barrier is sufficient to warn of the danger which it was erected to protect, a contractor has a similar duty to erect a barrier which, in and of itself, does not constitute an unreasonable danger to the general public using the highway or sidewalk.

The barrier here, if not sufficiently visible and of insufficient height, would constitute a negligently created nuisance and trap, waiting for the unwarned public to venture into it. On the other hand, if sufficiently visible or of sufficient height, injury was unlikely to result. Notwithstanding that plaintiff admitted its visibility from a distance of forty feet, if one looked for it, the evidence as to its visibility when much nearer and at a necessarily different sight-angle, and the evidence as to its height, was in such conflict that reasonable minds might conclude that the defendant was negligent in its erection and maintenance as well as they might have concluded that he was not. Stated in another way, the conflicting evidence as to visibility and height, when construed most strongly in the plaintiff's favor, and considered in the light of the undisputed facts, tends to prove the defendant to have been negligent in the manner in which he caused the barricade to be erected and maintained.

Reflecting on the plaintiff's duties the Supreme Court has held in *Grossnickle* v. *Village of Germantown,* 3 Ohio St. 2d 96:

"2. A pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered but is not, as a matter of law, required to look constantly downward under all circumstances even where she has prior knowledge of a potential hazard."

And, the Supreme Court held in the case of *Highway Construction Co.* v. *Sorna,* 122 Ohio St. 258:

"1. One using a sidewalk, cross walk, street or highway, which ordinary and reasonable care would inform him was dangerous, *takes the risk of such injuries as* may result to him *by open and apparent defects,* such as *his observation ought to have detected* and avoided. (*Schaefler* v. *City of Sandusky,* 33 Ohio St., 246, 31 Am. Rep., 533; *The Village of Conneaut* v. *Naef,* 54 Ohio St., 529, 44 N. E. 236, and *City of Norwalk* v. *Tuttle,* 73 Ohio St., 242, 76 N. E., 617, approved and followed.)" (Emphasis added.)

It is apparent from the emphasized portions of the latter citation that much of this law had its birth in the law of assumption of risk of a known danger and reflects only indirectly on a pedestrian's duty respecting unknown dangers. A traveler's

duty of vigilance is stated in 2 Restatement of the Law of Torts 1248, Section 474 b:

" * * * the plaintiff must not only exercise reasonable care to avoid dangers which are obvious or of which he has knowledge, but he must be alert to discover the actual condition of the roadway.

" * * * if the plaintiff would have observed the dangerous condition in time to avoid it, had he been paying that attention, which, in view of the normal risks of travel, a traveler should have paid, his contributory negligence in failing to exercise such reasonable vigilance is a bar to his recovery."

Moreover, as an Ohio municipality has a statutory duty to keep its public sidewalks open, in repair, and free from nuisance, a traveler on such sidewalks has the right to assume that this obligation has been observed until he is apprised to the contrary. *Darst* v. *City of Columbus*, 25 Ohio Law Abs. 397, 399.

In summary, a pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered and, if the sidewalk is located within a municipality, may assume, unless he has notice to the contrary, that the municipality has carried out its obligation to keep such sidewalk open, in repair, and free from nuisance. Nor, in exercising such care, is he required to look constantly downward under all circumstances to discover either latent or patent defects or dangers. However, if there are open and apparent defects which, in the exercise of such care, his observation ought to have detected, in using the sidewalk he assumes the risk of such injuries as may result to him by reason of such defects.

In determining the propriety of the directed verdict and construing the evidence as to disputed facts most strongly in favor of plaintiff we must conclude that the 2 x 4, visible at 40 feet when looked for, was not necessarily visible at any distance when one did not look for it; that, when looked at close to the point of the incident causing injury, it was grey with cement on top, grey in color on the side, and "blended" with the new concrete; that its bottom side was nine inches above the sidewalk on its north end and seven inches above the sidewalk at its

south end; and that it was a hazy day. Considering this evidence, as so construed, together with the evidence as to undisputed facts, we cannot say that reasonable minds could come to but the sole conclusion that the plaintiff was contributorily negligent in not seeing the 2 x 4 barricade which caused her injury.

It appearing that reasonable minds might reach different conclusions upon both the issue of negligence and the issue of contributory negligence, such issues were for the jury, and the Common Pleas Court committed errors prejudicial to the plaintiff, appellant herein, in directing a verdict for the defendant at the close of plaintiff's evidence and in overruling plaintiff's motion for a new trial, for which errors the judgment must be reversed and the cause remanded for a new trial.

*Judgment reversed.*

YOUNGER, P. J., and MIDDLETON, J., concur.