**GILPATRICK CONSTRUCTION COMPANY, Inc., a Wyoming corporation, Appellant (Defendant below),**

v.

**WIND RIVER READY–MIX CONCRETE COMPANY, a Wyoming corporation, Appellee (Plaintiff below).**

No. 3823.

Supreme Court of Wyoming.

Aug. 12. 1970.

William S. Bon, Casper, for appellant.

Charles E. Hamilton and H. S. Harnsberger, Jr., Riverton, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiff, Wind River Ready-Mix Concrete Company, filed a complaint against defendant, Gilpatrick Construction Company, for $10,304.50 actual damages growing out of plaintiff's truck being driven into a concrete-lined, cattle-guard pit from which the grating had been removed by defendant in the process of its rebuilding a secondary highway in Fremont County, Wyoming. It was alleged that defendant negligently removed the grating without placing barricades or other warnings across the road.

Defendant denied generally and pleaded both plaintiff's contributory negligence and that the alleged loss was due to independent acts of others or occurrences not the result of any human fault. The case was tried to the court without a jury and a judgment entered for plaintiff in the sum of $9,852.78, from which judgment the defendant has appealed.

Perhaps because plaintiff had called as adverse witnesses defendant's foreman, Krantz, and its superintendent, Devish, defendant presented no testimony and rested at the conclusion of the plaintiff's case. There was no substantial conflict in the evidence, and in the main the facts are undisputed:

The accident occurred about 9:30 a. m. on April 5, 1967, on the old portion of Wyoming State Secondary Highway 0708, approximately 9.7 miles south of Riverton where the highway runs in a generally north-south direction, the truck traveling in a southerly direction from Riverton towards the Beaver Creek oil fields. The road was dry and the weather more or less windy. As the attached map (Appendix I) showing the locations of the roadways indicates, some distance northerly from the cattle guard the oil mat road (double dotted line) intersects a new road, at the time of the accident still in a dirt condition (single solid line), which had previously been built to the south boundary of the Indian reservation. The new road (double solid line), extending southerly from the reservation, was being completed by the defendant.[1] During the initial part of the construction a barricade, consisting of three WC–4's, which are wooden barriers, seven feet high and ten feet wide, with diagonal stripes, was erected by the preceding contractor at the intersection of the old and new highways, which prevented traffic on the new highway. About a week before the accident, defendant removed the barricade, permitting travel to proceed on either the new or old road. Krantz testified that at about 3 p. m., April 4, under his supervision defendant's agents removed the grating from the cattle guard in order to take it to a new location and placed barricades to block traffic. Devish testified that he intended to obliterate or destroy the old road, a three-hour job, on April 5, the day of the accident. He said that when he drove along the new road, which was some four hundred feet distant, about 7 a. m., April 5, he saw the WC–4's in place. Rowe, a highway department inspector for the project, testified similarly that he had seen them while passing around 8 a. m. Krantz also testified that while heading south toward the job he stopped at the barricades on the old road about 8 or 8:30 a. m. and observed that they were in the place he had set them the night before. The driver of the truck, which on the morning of the accident was loaded with four and three-quarters yards of cement (the total vehicle weight being about 41,000 pounds), said he was driving southerly in his own lane of traffic in fourth gear at about forty miles an hour. He said he noticed two barricade signs facing edgewise to him, not broadside so as to permit seeing the crosshatching, but that these did not restrict his line of travel in any way. When he got some sixty to eighty feet from the pit, he saw there was no cattle guard there. He immediately applied the air brakes but was unable to stop, ran into the pit, and wrecked the truck. He was thrown out of the machine into the borrow pit and some time later picked up and taken to the hospital by a passing motorist. Patrolman Marsden arrived at the scene about a half-hour later to investigate and found two WC–4's (see Appendix II) with the crosshatching facing away from traffic approaching from the direction of the driver of the wrecked truck. They did not appear to have been damaged or to have been struck by the truck. Devish was advised by the patrolman it would be best if "curve" and "road narrows" signs north of the cattle guard pit were moved.

■ Defendant concedes that the issue of the driver's contributory negligence was a matter for the trier of facts to determine and does not challenge the court's finding in that aspect, but contends that the entire evidence with inferences reasonably to be drawn therefrom is insufficient to support a finding of negligence proximately causing the damage sustained by plaintiff, insisting that the judgment is contrary to the undisputed facts and the law applicable thereto. In an extension of this thesis, defendant contends that the undisputed evidence patently showed that in compliance with

---

1. Some distance northerly from the cattle guard a roadway turned to the east off the old road.

the duty to use reasonable and ordinary care it placed barricades warning of the presence of the hazard on the highway, these being in place one-half hour before the accident; some unknown agency evidently caused their removal; and consequently, there is a total lack of evidence from which it could be found or reasonably inferred any negligence of the defendant was a proximate cause of the barricades being displaced or of plaintiff's damages. Consistent with the lack of request by the litigants for special findings of fact and conclusions of law, none were made; and in accordance with the well-established rule, we must assume the court to have made every finding necessary to sustain the judgment provided there was substantial evidence which would justify such a finding. Colwell v. Anderson, Wyo., 438 P.2d 448, 452. This is true notwithstanding the circumstance that the court at the conclusion of the trial said orally it thought in fairness it should explain the reasons for the decision, many of which reasons have here been severely criticized by appellant. Miller v. Hedderman, Wyo., 464 P.2d 544, 545–546.

Defendant's rationale in the appeal is uncomplicated. If its premises may be accepted, its logic is incontrovertible; viz., (1) a road contractor is governed by ordinary rules of negligence, (2) barricades were erected in front of the pit and were adequate warnings, (3) these were in place approximately an hour before the accident, (4) no affirmative act of defendant caused their removal, (5) plaintiff failed to show that the removal was due to defendant's negligence and no judgment may be based on probabilities or speculation, (6) admittedly a curve sign some five hundred feet north of the junction was an invitation to travel the old highway but nothing in the evidence showed that the driver relied on the sign.

■ We can agree that a road contractor must exercise reasonable care to avoid injury to the traveling public and is governed by the ordinary rules of negligence,[2] but, of course, the law of negligence is predicated upon that which is required of a reasonable person in light of all the circumstances present.[3] We can likewise agree that there were barricades erected by defendant to the north and south of the pit on the evening of April 4, but whether these were adequate was a question for the determination of the trial court.

■ Although much of defendant's argument is directed toward its concern over whether or not the contractor had completed its duty to the public by simply placing barricades on the roadway or whether such duty was not complete in that the contractor owed a further duty to see that the barriers were anchored in a reasonably secure manner to prevent their being removed or blown away, we find no occasion for directing our attention to that facet. Testimony was adduced that there was no warning of danger nor barricades at the scene that restricted the driver's line of travel. According to the investigating patrolman, those WC–4's which he found did not appear to have been struck by the truck, and indeed, their physical position alone as described by the patrolman tended to establish the truck did not hit them. In order for defendant to here prevail, it must have proved rather than assumed the erection of barricades adequately warning motorists coming from the north along the old oiled portion of the highway.

Only Krantz and Devish testified as to the placement of the barricades on the evening before the accident—both having changed their testimony since the taking of their depositions. At the trial their testimony was so ambiguous that even defendant in its memorandum brief can manage no more than the equivocal statement that " * * * there were either two barricades on the north side of the cattle guard as indicated by the testimony of Mr.

2. Brasel & Sims Construction Co., v. Neuman Transit Co., Wyo., 378 P.2d 501, 504.

3. Phelan v. Read Construction Company, Wyo., 379 P.2d 829, 831.

Krantz and supported by his entry in his diary (Plaintiff's Exhibit No. 7) or one barricade with slanting boards extending from the sides as described by Mr. Devish."

Krantz's diary entries for April 4 and April 5 were vague:

"moved Concrete for cattle guard[.] moved grates[.] Set WC4ˢ at old cattleguard site[.]

"* * * Wind River concrete truck went through open cattleguard[.] WC4's were in place at 8:30 A.M. Driver claimed no Signs[.] after the wreck one WC4 (with road closed sign) was on the left side of the road. The other WC4 was in cattle guard pit app in the center of the road[.]"

It will be noted that although there is no specific mention of the number of WC-4's used, the inference from the second entry would be that there were two.

At the trial, Krantz testified:

"Q * * * About the hole [when you removed the cattle-guard grating], did you do anything about the hole? A Blocked the road with barricades.

"Q What did you use? A WC-4's.

"Q How many? A To my knowledge, there was three.

"Q All right. A As I recall.

"Q In relationship to the cattle guard pit, would you describe to the Court where the barricades were placed? A They was placed to block any traffic from the north, *between the approach, from the dirt road to it.*

"Q How far from the cattle guard pit? A *Whatever the cattle guard is from the approach off of that dirt over toward the cattle guard.*

"* * * * * *

"Q * * * Now, in regard to Plaintiff's Exhibit No. 6 [patrolman's diagram of the accident scene], Mr. Krantz, can you testify how far away from the cattle guard pit the barricades were placed on the north side of that pit? A I would say approximately 60 feet.

"Q Sixty feet? And the cross-hatching on those barricades was placed, was facing north? A Yes.

"Q How far was the WC-4 barricade to the south placed from the pit? A I don't recall how far away it was.

"Q All right. Now, there was one barricade placed on the left side of the line of traffic approaching from the north and one placed on the right side? In other words, one on each side of the highway facing north; is that correct? A As I recall, it is.

"Q About 60 feet north of the cattle guard pit? A Yes." (Emphasis supplied.)

While counsel for defendant now indicates Devish's testimony was to the effect that there was only one barricade on the north side of the cattle guard, we are unable to glean this from the record. He simply did not testify as to the number of barricades set out north of the cattle guard or their exact placement.

■ When work is done in or near a highway, due care must be taken by the contractor to avoid injury to travelers. *Phelan v. Read Construction Company,* Wyo., 379 P.2d 829, 831. In the instant case the old curve sign, employed before the new road had been opened to travel, was still in place, indicating that traffic from the north should proceed along the oiled road and over the cattle guard. Plaintiff clearly established there was no proper warning of any danger as the driver approached; and although at pretrial it was the position of defendant that it used ordinary and reasonable precautions—placing barricades blocking traffic and warning of the condition on the afternoon of April 4 (and that plaintiff's driver either struck the barricades or some unknown person removed them or a freak windstorm of severe intensity, which occurred that morning, blew them out of position)—the only purported specific adduced at the trial as to the position of the WC-4's was from Krantz who spoke in meaningless terms of the approach from the "dirt road" to the

cattle guard. The employee's testimony relative to the barricades the morning of the accident, i. e., that they were "in place," is not helpful. Of course, the trial court was also entitled to take into consideration the fact that these witnesses' testimony concerning the barricades was at substantial variance from that previously given in their depositions. Under these circumstances, we find no valid basis for reversing the judgment of the trial court.

Affirmed.

## APPENDIX I

[A2446]