**Joseph ALLMARAS, Personal Representative of the Estate of John David Allmaras, deceased, Appellant (Plaintiff),**

v.

**Lisa Fern MUDGE; 71 Construction, a Wyoming corporation; and Kloefkorn-Ballard Construction/Development, Inc., a Wyoming corporation, Appellees (Defendants).**

No. 90–275.

*Supreme Court of Wyoming.*

Nov. 8, 1991.

---

Joseph E. Darrah, Powell, for appellant.

Anthony A. Johnson of Retherford, Mullen, Rector & Johnson, Colorado Springs, Colo., for appellee 71 Construction.

Ann M. Rochelle of Williams, Porter, Day & Neville, Casper, for appellee Kloefkorn–Ballard Constr./Development, Inc.

Before URBIGKIT, C.J., and THOMAS, CARDINE, and GOLDEN, JJ., and BROWN, Ret. J.

URBIGKIT, Chief Justice.

Appellant, Joseph Allmaras (Allmaras), father and personal representative of the estate of John David Allmaras, by suit for wrongful death, appeals from a summary judgment granted to Kloefkorn–Ballard Construction/Development, Inc. (Kloefkorn–Ballard) and 71 Construction. We affirm the judgment favoring 71 Construction and reverse as to Kloefkorn–Ballard.

## I.

### ISSUE

Allmaras raises one issue:

Did the trial court improperly exonerate the Appellee-contractors from their negligence; or at least concurrent negligence, in violating their duty to warn the traveling public of the construction hazards created by them which resulted in the death of Appellant's decedent under the circumstances?

## II.

### FACTS

For purposes of summary judgment, the pleadings, depositions, affidavits and exhibits established the following as generally undisputed facts.

On February 23, 1987, Paradise Valley Waste and Sewer District entered into an

agreement with contractor Kloefkorn–Ballard to do utility system improvement construction. Work was to be done on three different areas, but Schedule C was the area in which the accident occurred at the intersection of Dahlia Street and Valley Drive. Kloefkorn–Ballard, as contractor, entered into an agreement with Jackman–Jackman as a general subcontractor. When Jackman–Jackman had finished its work, the back-filled road surface was passable through the area, although unfinished and subject to settlement before asphalt repaving. The street was then unbarricaded and opened to traffic usage.

On June 23, 1987, Boatright–Smith signed a subcontract agreement with Kloefkorn–Ballard to install the asphalt, which required Boatright–Smith to begin work after Jackman–Jackman had finished. Because Boatright–Smith had become preoccupied in moving their asphalt plant, 71 Construction was asked to do this work.

On August 18, 1987, John David Allmaras was killed while riding in a car driven by nineteen-year-old Lisa Fern Mudge (Mudge). Mudge lost control of the car as she approached the Dahlia Street and Valley Drive intersection. John David Allmaras was thrown from the car and the vehicle rolled over him. The Mudge vehicle was travelling south and the construction work had only occurred in the northbound lane.

On May 12, 1988, Allmaras filed suit against Mudge arguing that Mudge's negligence in driving at an excessive speed and while intoxicated was the direct and proximate cause of the death of his son. On January 9, 1989, Allmaras amended the complaint to include Kloefkorn–Ballard and 71 Construction. In that amended complaint, Allmaras claimed Kloefkorn–Ballard was the contractor and 71 Construction was a subcontractor at all relevant times for improvements to the Paradise Valley Water and Sewer District. The amended complaint claimed that both contractors had a duty, imposed both by contract and by law, to erect warning signs. In response, Kloefkorn–Ballard answered the amended complaint and brought Boatright–Smith and Jackman–Jackman into the litigation by cross-claim. During litigation, Allmaras settled with Mudge resulting in dismissal of the complaint against her.[1]

On September 28, 1990, the trial court, finding there were no genuine issues of material fact and that all defending parties were entitled to summary judgment as a matter of law, granted summary judgment to Kloefkorn–Ballard, 71 Construction, Boatright–Smith and Jackman–Jackman. The trial court found as a matter of law that none of those contractor parties had a duty to warn southbound traffic of construction located in the northbound lane.

### III.

### STANDARD OF REVIEW

Summary judgment is proper when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Baros v. Wells*, 780 P.2d 341 (Wyo.1989); *Farr v. Link*, 746 P.2d 431 (Wyo.1987). A material fact is one which would establish or refute an essential element of the cause of action or defense asserted by the parties. *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174 (Wyo.1988); *Johnston v. Conoco, Inc.*, 758 P.2d 566 (Wyo.1988). We review a summary judgment in the same light as the trial court, using the same materials and following the same standards. *Baros*, 780 P.2d 341; *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Baros*, 780 P.2d 341; *Doud v. First Interstate Bank of Gillette*, 769 P.2d 927 (Wyo.1989). The character and classification of Wyoming summary judgment law is comprehensively analyzed in *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986). *See Davenport*

---

1. During appeal, Boatright–Smith settled out and Jackman–Jackman was dismissed by this court since its status as a third-party defendant raised no appellate issue. This left only Kloefkorn–Ballard and 71 Construction as appellees.

*v. Epperly,* 744 P.2d 1110 (Wyo.1987). "Although summary judgments are not favored in negligence actions, where the record fails to establish an issue of material fact [and when the movant is entitled to the judgment as a matter of law], the entry of summary judgment is proper." *MacKrell v. Bell H₂S Safety,* 795 P.2d 776, 779 (Wyo.1990). *See also* W.R.C.P. 56(c). Applying our standard of review, we examine the record to determine whether summary judgment in favor of 71 Construction and Kloefkorn–Ballard was appropriate. We must decide whether, as a matter of law, 71 Construction owed Allmaras a duty and whether a factual issue exists as to Kloefkorn–Ballard's liability. *Cordova,* 719 P.2d 625.

## IV.

## ISSUES OF LIABILITY— 71 CONSTRUCTION

 Under Wyoming law, the tort of negligence must be based upon the breach of a duty where that breach proximately caused an injury to the plaintiff. *Beard v. Brown,* 616 P.2d 726 (Wyo.1980). Whether a legal duty exists is a question of law. *Thomas by Thomas v. South Cheyenne Water and Sewer Dist.,* 702 P.2d 1303 (Wyo.1985). Because we hold that 71 Construction had no duty to Allmaras for signs and road conditions at the construction site, summary judgment in favor of 71 Construction is appropriate.

While the control over the construction site could be a material fact, there was nothing beyond the allegation by Allmaras that 71 Construction controlled the site. Its repaving function was performed on oral order from Boatright–Smith and the re-paver had not commenced work at the accident site before the accident happened, although it did start preparation for repaving early the next morning. In *Thomas by Thomas,* we upheld summary judgment in favor of the South Cheyenne Water and Sewer District because the district had no control over the accident's area and therefore owed no duty. We are faced with a similar situation here with respect to pre-accident participation at the accident scene by the repaving subcontractor.

The deposition testimony offered in support of its motion for summary judgment indicated 71 Construction had not exercised control of the area by the time of the accident. That evidence was not factually disputed by Allmaras. " 'After the movant establishes a prima facie case the burden of proof shifts to the opposing party who must show a genuine issue of material fact * * * or come forward with competent evidence of specific facts countering the facts presented by the movant.' " *Id.* at 1304 (quoting *Roth v. First Sec. Bank of Rock Springs, Wyo.,* 684 P.2d 93, 95 (Wyo.1984)). It is indisputable that 71 Construction never exercised control over the site prior to the accident.

Although Allmaras claimed 71 Construction had contractual and legal duties, there was nothing beyond the allegation to support that claim. Nowhere within the oral work order is the source for the contractual duty pinpointed. Additionally, Allmaras presents no legal authority that would create such a duty under the circumstances of this case involving that oral order with respect to the paving to be done on a day work basis.

"Liability must be based upon duty." *Thomas by Thomas,* 702 P.2d at 1307; *accord Medlock v. Van Wagner,* 625 P.2d 207 (Wyo.1981). "If duty has not been established, there is no actionable negligence." *Thomas by Thomas,* 702 P.2d at 1307. Because it is unquestionable that 71 Construction exercised no control over the general job or this specific site prior to the time of the accident, no duty to Allmaras could have arisen. As a matter of law, summary judgment was appropriate in favor of 71 Construction because it had no duty to users of the street where it had not yet commenced its repaving work. *Davenport,* 744 P.2d 1110. We affirm summary judgment in favor of 17 Construction.

## V.

## ISSUES OF LIABILITY—KLOEFKORN–BALLARD

In considering the issue of liability of Kloefkorn–Ballard, we analyze the same

negligence elements as stated in the previous section. In granting Kloefkorn–Ballard's motion for summary judgment, the trial court determined Kloefkorn–Ballard owed no duty to the decedent and, further, that the acts of Kloefkorn–Ballard were not the proximate cause of John David Allmaras' death. Summary judgment is inappropriate, however, if a duty exists and if there is a genuine issue whether that duty was breached or whether that breach caused the injury.

**A. Duty.**

■ Did a duty exist? The trial court found that there was no duty to warn because the car in which John David Allmaras rode was travelling southbound and the street had been dug up only in the northbound lane. The contract between Kloefkorn–Ballard and the Paradise Valley Water and Sewer District imposed the primary responsibility upon Kloefkorn–Ballard for "initiating, maintaining and supervising all safety precautions and programs in connection with the [w]ork."

In addition to the contractually imposed duty, the duty to place appropriate warning signs was also imposed by law through city ordinance. The City of Casper has a "Manual of Specifications & Procedures for the Use of Traffic Control Devices in Construction & Maintenance Areas." That manual says that "[i]t is essential that signs be positioned in such a manner that the public has sufficient time to react to the changes in traffic patterns or other requirements of the work area." No legal questions exist

regarding the duty to provide signs; the factual issue is where. We hold that a jury could properly find within the evidence provided at the summary judgment stage that the duty to provide warning signs at this particular construction zone existed for traffic moving in both directions. *Distad v. Cubin,* 633 P.2d 167 (Wyo.1981); *Culver v. Sekulich,* 80 Wyo. 437, 344 P.2d 146 (1959); *Ruhs v. Pacific Power & Light,* 671 F.2d 1268 (10th Cir.1982). *Cf. Short v. Spring Creek Ranch, Inc.,* 731 P.2d 1195 (Wyo.1987).[2]

**B. Proximate Cause and Associated Issues of Appeal.**

Kloefkorn–Ballard asserts three contentions to provide an escape from liability, even though complete traffic warning signs were not provided at the accident site in compliance with either city ordinance or construction contract. Although this is essentially a proximate cause-summary judgment issue, each of those contentions will be examined in conjunction with the proximate cause review.

(1) *Protective Delegation to Independent Contractor Providing Immunity From Liability.*

■ Kloefkorn–Ballard argues, although without persuasive conviction, that it was not liable for any failure of its subcontractors to provide proper warning signs. The cited authorities are not persuasive to justify a decision as a matter of law that a general contractor like Kloefkorn–Ballard could delegate both ordinance and contrac-

**2.** The trenching at the point of the accident extended from the east edge of the north lane of Valley Drive to the middle of the street where a sewer manhole had been installed. Consequently, no direct interference by paving tear up had been created for the travel lane used by the southbound vehicle in which John David Allmaras was riding. The opened-up pavement to the center of the street for northbound vehicles provided a back-filled dip since final repair had not been completed. It is a general argument of Allmaras that a zone of danger was created for the *southbound* traffic since *northbound* drivers crossed over into the opposite lane in order to avoid the dip. Mudge, as the driver, had previously passed this location and immediately before losing control of the vehicle, was emphati-

cally warned by another passenger "to watch out for [the] dip." In reaction to the warning, Mudge swerved to the right from the center of the street where the vehicle was then traveling, lost control of the vehicle, hit a curb, skidded and rolled.

Whether Allmaras' stated concept can ever be sold to a jury may be problematical, but one explanation for the sudden shock, loss of control and rollover might be Mudge's suddenly realized nighttime fear in approaching the area that an oncoming car could be in the wrong lane to avoid the dip and consequently cause a head-on collision. Within the summary judgment evidentiary status of this appeal, an oncoming vehicle was never shown to have existed.

tual duty, *Ely v. Kirk*, 707 P.2d 706 (Wyo. 1985); *Brubaker v. Glenrock Lodge Intern. Order of Odd Fellows*, 526 P.2d 52 (Wyo.1974), for street repair signs to its subcontractors and consequently absolve itself from negligently caused injury to street users at its construction site within city streets. *Evans v. Elliott*, 220 N.C. 253, 17 S.E.2d 125 (1941). Following the general law, we hold that the general contractor had a non-delegable duty under the facts here presented involving a constructionally created hazardous condition, *Thomas v. Harrington*, 72 N.H. 45, 54 A. 285 (1902), to assure safety to the driving public during street repair by providing proper warning signs. *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890 (Wyo.1986); *Casper Nat. Bank v. Jones*, 79 Wyo. 38, 329 P.2d 1077 (1958); *Stockgrowers' Bank of Wheatland v. Gray*, 24 Wyo. 18, 154 P. 593 (1916); Prosser and Keeton on Torts § 71 (5th ed. 1984); Restatement (Second) of Torts § 414 (1965). *See also Lindler v. District of Columbia*, 502 F.2d 495 (D.C.Cir.1974) and *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916). Either site condition which forecloses release by delegation to an independent contractor (1) inherently dangerous activity or (2) activity necessitating special precautions can be applied here, which creates a non-delegable duty. *Lindler*, 502 F.2d 495; *Washington Metropolitan Area Transit Authority v. L'Enfant Plaza Properties, Inc.*, 448 A.2d 864 (D.C.App. 1982).

### (2) *Adequacy of Signs as a Matter of Law.*

■ The second argument is that signs were in place for travel on the opposite lane—northbound—and consequently were not needed for warning to decedent's host driver where the southbound lane had not been disturbed in construction. Within the context of this case and in the face of the expert witness whose affidavit was provided by Allmaras, this examination clearly reaches an issue of fact status. *Gilpatrick Const. Co. v. Wind River Ready–Mix Concrete Co.*, 473 P.2d 586 (Wyo.1970). The jury, not the trial court, should decide whether any signs provided were "adequate" and consequently not negligent in what was or was not done. That argument leaves a factual decision which is inappropriate for summary judgment disposition. *Cohen v. Sahuaro Petroleum & Asphalt Co.*, 17 Ariz.App. 215, 496 P.2d 641 (1972); *Transcon Lines Corp. v. Cornell Const. Co., Inc.*, 539 P.2d 1372 (Okl.1975). There were no street construction signs for drivers in the southbound lane which was the direction occupied by decedent's host driver. *Smith v. Lafortune*, 288 Minn. 135, 179 N.W.2d 136 (1970). Considering the relevant circumstances—the construction contract, city ordinance requirements, traffic patterns, neighborhood usage, and non-linear configuration of the street—there was an appropriate jury issue of negligence from neglect to provide the warning signs for that street at that repair construction site, which were called for by both city ordinance and contract. *Gilpatrick Const. Co.*, 473 P.2d 586; *Jackson v. W.A. Norris, Inc.*, 54 Wyo. 403, 93 P.2d 498 (1939); *Ferguson v. Ben M. Hogan Co.*, 307 F.Supp. 658 (W.D.Ark.1969); *Moore v. Geiger*, 6 Ohio App.2d 14, 215 N.E.2d 607 (1966).

### (3) *Controlling Issue—Existence of Proximate Cause.*

Finally, Kloefkorn–Ballard attempts to avoid liability in this instance by arguing that its failure to provide traffic warning signs was not the proximate cause of John David Allmaras' death. The third and compelling issue of this case is proximate cause. Recognizing at least a jury decision requirement to determine the obligation to provide warning signs at the construction site and the factual issue of the adequacy of warning signs utilized, we are left with the decision of whether failure to provide signs constituted a proximate cause of this fatal accident.

In fairness to the litigants and to the trial court, a more detailed recitation of the facts is required. Mudge had borrowed a car early in the evening and spent the next hours driving, visiting and drinking alcoholic beverages. During the course of the evening, Mudge and her female friend be-

came acquainted with the decedent and another young man. After each of these young people had consumed three to four beers, the time came when Mudge drove them toward the Dahlia Street and Valley Drive intersection where the construction work was located.

It is established that the posted speed limit at the accident site was thirty miles per hour and Mudge, immediately before the accident, had been accelerating. She was traveling at least sixty-five miles per hour before she lost control while approaching the area where a trench had been dug to mid-street for a sewer manhole installation. The trial court found, and Kloefkorn–Ballard now argues, that the proximate cause of the accident was the vehicle speed, alcoholic condition of Mudge, and subsequent loss of control. Mudge, as a result of the occurrence, made a guilty plea to vehicular homicide. It is contended that warning signs in the southbound lane of travel would not have deterred driving speed or changed the loss-of-control result.

The investigative police officer testified by deposition that the sole cause of the accident was the character of driving by Mudge. Conversely, Allmaras provided an expert witness who stated in affidavit that adequate warning signs would have allowed the driver of the vehicle to slow down and consequently pass the construction site without danger:

6. That I am further of the opinion, based upon reasonable professional certainty, under all of the circumstances here present, that had the construction signage been installed in compliance with the aforesaid Casper Manual and Uniform Manual at the time of the accident to advise both north bound and south bound traffic of the construction activity at the intersection of Valley Drive and Dahlia Street, such signage would have allowed, even given the excessive speed of upwards of 65 MPH or more of the Mudge vehicle, additional reaction time to the driver of the Chevrolet Camaro, Lisa Mudge. The fact that Miss Mudge could and would reasonably be expected to react to the imminent presence of this signage is shown by the physical facts at the scene in that Mudge did in fact react to the presence of the construction site once the area came within her view or the view of her passengers. At that time, her reaction took the form of a swerving motion to avoid the perceived dug-out area of the construction site within Valley Drive. Additional signage would have given Miss Mudge advance notice of the presence of construction activity, and would have timely reminded her of the abnormal and hazardous nature of the road surface in that intersection area.

7. That I am further of the opinion based upon reasonable professional certainty, under all of the circumstances aforesaid, that proper construction signage placed at recommended distances prior to the construction activity would have allowed the Chevrolet Camaro, even with the reported location and excessive speed of Mudge to slow to a safe passing speed, or even to slow to a stop if necessary, prior to traversing the area of the intersection of Valley Drive and Dahlia where the construction activity was taking place. With the evidence aforesaid that Mudge had a predisposition to react to a known danger, the increased reaction time created by the proper placement of construction sign, and warning devices alerts a driver to unusual road surface conditions, unusual activities in, and adjacent to the road, and to be cautious of roadway conditions [due to] the construction activity. This, in turn, given the circumstances and speed of the Mudge vehicle, would allow ample time, and therefore ample distance for Miss Mudge to have adjusted her driving to a reasonable manner for activities and traffic conditions that could be expected in a highway construction zone to avoid the collision.

Complex and conflicting arguments are made whether warning signs for this lane of travel, where none had been provided, would have prevented the accident. Since we deal with what Mudge would have done if signs had been in place, no result assessment with reasoned certainty can be made.

It seems relatively determined from all witnesses that a safe passage could easily have been negotiated within her proper lane and, perhaps, even her attained speed if Mudge had slowed down prior to reaching the area where the street had been dug up in the opposite lane, and had she not suddenly jerked the wheel to move further to the outside edge of the roadway. Her fault in negligent driving is not an issue.

For summary judgment consideration in accepting that adequate warning signs had not been provided, we analyze whether proximate cause is determinable as a matter of law for this other participant as announced by the trial court and contended by appellees or remains as a factual issue for jury decision as Allmaras' argument. Exhaustive evaluation and review of proximate cause can be found in the literature of the law, which is a subject considered to be one of the most troubling areas of decision within basic tort law.

The most important and challenging questions in tort law for this case involve issues of proximate cause, such as whether it is proper for jury decision to submit the question of England's recovery from Simmons for causing the head-on collision with Barnes. Vandall, *Judge Posner's Negligence–Efficiency Theory: A Critique*, 35 Emory L.J. 383, 404 (1986). * * * It seems clearly established by the Restatement of Law and general case law that foreseeability is not a factor of proximate cause but instead an element of causal negligence.

> "The term 'proximate cause' is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established. * * * ['Proximate'] is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. For this reason 'legal cause' or perhaps even 'responsible cause' would be a more appropriate term. * * *
>
> * * * * * *
>
> " * * * [T]wo contrasting theories of legal cause recur throughout the cases and account for most of the conflict with respect to the choice of a basic theory. One of these theories is that the scope of liability should ordinarily extend to but not beyond the scope of the 'foreseeable risks'—that is, the risks by reason of which the actor's conduct is held to be negligent. The second, contrasting, theory is that the scope of liability should ordinarily extend to but not beyond all 'direct' (or 'directly traceable') consequences and those indirect consequences that are foreseeable.
>
> " * * * Another choice of theory concerns the question whether all limitations on the scope of liability of a negligent defendant—apart from defenses and, in some instances, requirements regarding the nature of the harm—will be dealt with under the rubric of 'legal cause' (or 'proximate cause') or instead some will be dealt with as issues of 'duty.' " Prosser and Keeton on The Law of Torts, Ch. 7, § 42 at 273–74.
>
> " * * * It is simpler, and no doubt more accurate, to state the problem in terms of legal responsibility: is the defendant legally responsible to protect the plaintiff against such unforeseeable consequences of the defendant's own negligent acts? * * * As to this problem, there are two basic, fundamental, opposing and irreconcilable views, which have been in conflict for more than a century; and each has developed complications of its own. * * *
>
> [* * *]
>
> "The first of these positions * * * [is] that the same criterion of foreseeability and risk of harm which determined whether the defendant was negligent in the first instance should determine the extent of the liability for that negligence; and that no defendant should ever be held liable for consequences which no reasonable person would expect to follow from the conduct. * * * " Prosser and Keeton on The Law of Torts, supra, § 43 at 281.

"There remains the opposing view, which has been urged from time to time by a good many writers, that a defendant who is negligent must take existing circumstances as they are, and may be liable for consequence brought about by the defendant's acts, even though they were not reasonably to be anticipated. * * *" Id. at 290.

*England v. Simmons*, 728 P.2d 1137, 1150–51 (Wyo.1986), Urbigkit, J., dissenting.

Prosser and Keeton on Torts, *supra,* § 45 at 321 (footnotes omitted) states:

Thus, in any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way. By far the greater number of the cases which have arisen have been of this description; and to this extent it may properly be said that "proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case."

Restatement (Second) Torts, *supra,* §§ 430, 431, and 435 state:

§ 430. Necessity of Adequate Causal Relation

In order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm.

§ 431. What Constitutes Legal Cause

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

§ 435. Foreseeability of Harm or Manner of Its Occurrence

(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.

(2) The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.[3]

An illuminating discussion of causation is also found in Keeton, *Causation*, 28 S.Tex. L.Rev. 231, 231–32 (1986) (emphasis in original and footnotes omitted):

There are four elements in a claimant's prima facie case of negligence. These generally recognized elements are: (1) a duty of reasonable care, (2) a breach of that duty, (3) proximate causation, and (4) damages. An explanation of the terms duty and breach of duty is necessary to identify the issues underlying each of the elements and the problems arising in connection with proximate cause.

\* \* \* \* \* \*

Generally, two elements are required to establish that the negligence of a defendant is the proximate cause of a plaintiff's injury: factual causation and legal causation. Factual causation refers to the requirement that the act and the injury be related. Legal causation refers to the requirement that the act and the injury be *reasonably* related.

This appeal presents double concepts frequently presented in proximate cause ex-

---

**3.** A representative listing of Wyoming cases, inclusive through 1985, can be found in *England,* 728 P.2d at 1152 n. 2. A primary case of more recent date is *Stephenson v. Pacific Power & Light Co.,* 779 P.2d 1169 (Wyo.1989). *See also* *Petersen v. Campbell County Memorial Hosp. Dist.,* 760 P.2d 992 (Wyo.1988); *Bettencourt v. Pride Well Service, Inc.,* 735 P.2d 722 (Wyo. 1987); and *DeWald v. State,* 719 P.2d 643 (Wyo. 1986).

542

aminations. First, foreseeability and its relationship to legal responsibility, and second, jury participation in resolution of proximate cause as a factual decision. Justice Blume of this court provided a basic and well reasoned analysis on the subject in one of his last opinions which included a quotation from W. Prosser, Handbook of the Law of Torts, at 324 (1st ed. 1941):

"If the defendant's conduct was a substantial factor in causing the plaintiff's loss, it follows that he will not be absolved from responsibility merely because other causes, such as the negligence of other persons, have contributed to the result."

If the original wrongdoer "could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another." Shearman & Redfield on Negligence, Rev.Ed., Section 38.

*Phelps v. Woodward Const. Co.*, 66 Wyo. 33, 204 P.2d 179, 187 (1949). In *Phelps*, Justice Blume considered similar facts involving the liability of a utility for a shallow gas line which was hit by a negligent grading contractor. Proximate cause was justifiably determined by the jury as a factual issue and the resulting plaintiff's verdict was affirmed on appeal.

In considering the voluminous yet conflicting evidence about the nature of travel on Valley Drive and the problem created by the insufficient warnings to alert drivers to the danger created by the manhole installation, proximate cause becomes an issue of fact to be resolved by a jury. *Bettencourt v. Pride Well Service, Inc.*, 735 P.2d 722 (Wyo.1987). *See also Buckley v. Bell*, 703 P.2d 1089 (Wyo.1985); *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo.1983); and *O'Mally v. Eagan*, 43 Wyo. 233, 2 P.2d 1063, *reh'g denied* 43 Wyo. 350, 5 P.2d 276 (1931).

In the carefully considered case of *Stephenson v. Pacific Power & Light Co.*, 779 P.2d 1169, 1178 (Wyo.1989), this court recognized:

Proximate cause is normally a question of fact unless the evidence is such that reasonable minds could not disagree. * * * [T]he ultimate test of proximate cause is the foreseeability of injury, and we noted that it is not necessary that the specific injury be foreseen—it is sufficient if a reasonably prudent person would foresee that the same general type of injury would be likely in the absence of adequate safeguards.

In *Bettencourt*, 735 P.2d at 726, a case considering proximate cause with similar issues and structured nature for appeal, this court said:

The concept of proximate cause and how it is to be established in a judicial forum is the crux of this case. In *McClellan v. Tottenhoff*, Wyo., 666 P.2d 408, 414 (1983), we said, "[p]roximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence." That case involved the sale of intoxicating liquor to a minor, and we went on to hold that whether the vendor could foresee an injury to a third person would be the ultimate test. More recently, in *Buckley v. Bell*, Wyo., 703 P.2d 1089, 1091–1092 (1985), the following definition of proximate or legal causation was espoused:

"* * * [T]hat conduct which is a substantial factor in bringing about the injuries identified in the complaint. * * * [I]f the conduct is 'that cause which in natural and continuous sequence, unbroken by a sufficient intervening cause produces the injury, without which the result would not have occurred,' it must be identified as a substantial factor in bringing about the harm." (Citations omitted.)

Our usual disposition is to treat proximate causation as a question of fact to be resolved by the trier of fact unless, on the evidence demonstrated in the file reasonable persons could not disagree.

## VI.

## CONCLUSION

We conclude that this case presents proximate cause as a factual resolution for jury

disposition since reasonable minds could disagree whether the absence of warning signs was the proximate cause of the passenger's death in the vehicular accident. Summary judgment is inappropriate.

Judgment in favor of 71 Construction is affirmed. Judgment in favor of Kloefkorn–Ballard Construction/Development, Inc. is reversed and remanded.

GOLDEN, Justice, concurring in part; dissenting in part.

I concur in this court's affirmance of the summary judgment in favor of 71 Construction; however, I respectfully dissent from this court's reversal of the summary judgment in favor of Kloefkorn–Ballard. I would hold as a matter of law that Kloefkorn–Ballard's failure to sign the construction area was not the proximate cause of this tragic accident and John Allmaras' senseless death.

I agree with the majority that Kloefkorn–Ballard, as the road contractor, owed a duty to the motoring public to take due precautions for the safety of motorists. *Gilpatrick Construction v. Wind River Ready–Mix Concrete Company*, 473 P.2d 586 (Wyo.1970); *Phelan v. Read Construction Company*, 379 P.2d 829 (Wyo.1963); *Brasel & Sims Construction Co. v. Neuman Transit Co. Inc.*, 378 P.2d 501 (Wyo. 1963); and *Jackson v. W.A. Norris, Inc.*, 54 Wyo. 403, 93 P.2d 498 (1939); and *see* 4 Blashfield *Automobile Law and Practice* § 164.11, p. 428 (3d ed. 1965).

Before proceeding, I reiterate this court's definition of proximate cause, that it "means the accident * * * must be the natural and probable cause of the act of negligence" and "is normally a question of fact unless the evidence is such that reasonable minds could not disagree." *Century Ready–Mix Company, et al. v. Campbell County School District, et al.*, 816 P.2d 795, 805–06 (Wyo.1991); *Stephenson v. Pacific Power & Light Company*, 779 P.2d 1169, 1178 (Wyo.1989). After carefully reading the materials submitted by the parties for and against summary judgment, I conclude that the evidence presented is such that reasonable minds could not dis-

agree. Therefore, Kloefkorn–Ballard's failure to sign the construction area was not the proximate cause of this tragedy.

The most pertinent materials submitted by the parties and on which they relied for purposes of the summary judgment motion included the depositions of the three surviving occupants of the car, driver Lisa Mudge and two passengers Jackie Kinder and Troy Nash; the deposition of Officer Branson, investigating for the city police department; the deposition of Sgt. Martin, investigating on behalf of the Wyoming Highway Patrol; and the affidavit and deposition of Arnold G. Wheat, accident reconstructionist hired by plaintiff Joseph Allmaras.

From the depositions of driver Lisa Mudge and passenger Jackie Kinder, we learn that they were familiar with the construction area, having driven through it twice before the accident happened. They had driven in the northbound lane through the area around 3:00 or 4:00 p.m. Later that same day, around 9:30 or 10:00 p.m., they traveled through the construction area again. Kinder reminded Mudge of the area's existence before she got to it, and Mudge successfully passed around the area at a rate of speed of 30–35 m.p.h. Referring to the construction area as a "dip" in the road, Mudge testified she was concerned with the dip at this time because she did not "want to hit it." On this occasion the deceased and Troy Nash, both of whom two hours later would be unfortunate passengers in the car driven by Mudge when it crashed, were following Mudge in the deceased's car and also traveled through the area. About this, Nash testified he saw Mudge brake briefly at the construction area but go around it at a "pretty fast speed," a lot faster than the deceased did. He believed she was over the speed limit when she briefly applied her brakes.

The accident occurred approximately two hours after Mudge and Kinder had traveled through the area on their way to Mudge's house for a party. According to the investigating law enforcement personnel, at the time of the accident Mudge was operating the high performance Camaro at a rate of

speed from 60–70 m.p.h. when these youths approached the construction area. Mr. Wheat also estimated Mudge's rate of speed at approximately 60 m.p.h. About this fateful approach to the construction area, Kinder testified that she told Mudge she was driving too fast, and Mudge testified that as she traveled southbound on Valley Drive, "It was in my head, I believe" that the construction area was there. At a distance of about 300 feet north of the construction area (the length of a football field), in order to be heard over the blaring car stereo speaker playing the pop hit *La Bamba,* Kinder screamed that Mudge should not forget that the construction area was ahead. At the time of this warning, the Mudge-driven Camaro was about a half block north of the intersection of Valley Drive and Marigold (Marigold joins Valley Drive from the east and is not a through street, i.e., it ends at Valley Drive). Mudge testified she does not recall becoming concerned about the construction area. Neither Mudge nor Kinder remember what happened from this point on as the accident unfolded.

Troy Nash remembered the events preceding the accident. As Mudge turned onto Valley Drive and headed south in the southbound lane, she "started getting some pretty high speed going." So to Nash, Mudge seemed to continue picking up speed before the accident. He testified that where Valley Drive curves, Mudge was going fast enough that when they came to the curve Mudge switched from the southbound lane to the oncoming northbound lane so she would not roll the car. Nash said, "She was going too fast to stay in the right lane. And it's like a race car driver, where you go around the corner, you bank high. Well, that's what she was doing." Nash further testified there was no traffic on Valley Drive as they traveled southbound.

According to Nash, both he and the deceased simultaneously told Mudge to slow down. They told her this a couple of seconds before Kinder told Mudge to "watch out for the hole [construction area]." Nash testified the car was in the northbound lane on Valley drive for a few sec-

onds and then moved over into the southbound lane. The car then hit the west curb on Valley Drive. When the car hit the curb, the car careened to the left, sliding toward the construction area.

Officer Branson testified that the Mudge-driven Camaro struck the west curb of Valley Drive about 190 feet north of the south curb of Dahlia Street which intersects Valley Drive south of Marigold's intersection with Valley Drive. Branson estimated Mudge's rate of speed at about 60 m.p.h. when she struck the curb. Further, Mudge's blood alcohol was .14; the level at which a person is considered intoxicated in Wyoming is .10 or more. W.S. 31–5–233(b)(iii) (Nov. 1984 Repl.)

Sgt. Martin investigated Valley Drive north of the west curb area. He then called in Lt. Arnold from the highway patrol and together they investigated Valley Drive north from the intersection of Marigold and Valley Drive. They found tire marks attributed to the Mudge-driven Camaro which crossed from the southbound lane of Valley Drive into the northbound lane and onto the east sidewalk approximately 200 feet north of Marigold. Martin, Arnold and Officer Dye, also of the highway patrol, calculated Mudge's rate of speed to be approximately 70 m.p.h. at a point about 300 feet north of the construction area. According to Martin's calculations, the Mudge-driven Camaro traveled on the sidewalk for about 200 feet before it left the sidewalk at Marigold and Valley Drive. Thus, when Mudge was nearly 430 feet north of the construction area, she had switched from the southbound to the northbound lane and gone onto the east sidewalk, all the while traveling at a high rate of speed.

In summary, we have a driver who was under the influence of alcohol, driving a high performance vehicle at a rate of speed estimated between 60–70 m.p.h., and traveling on a familiar curving roadway toward a known construction area.

Against this factual setting, appellant relies on the deposition and subsequent affidavit of an accident reconstructionist to

create an issue of fact about whether Kloefkorn–Ballard's failure to sign the construction area was a proximate cause of the accident. This witness stated that the purpose of signs is to warn motorists of the presence of the construction site so they may adjust their driving to safely traverse the area. In *Lopez v. American National Bank of Cheyenne*, 389 P.2d 21, 22 (Wyo.1964), in which this court affirmed a directed verdict for the defendant bank and against the bank's customer who was injured when he walked into and shattered the glass panel next to a glass double-door entrance to the bank, this court said:

> Even had there been a duty on the part of the bank to give some type of special warning to its business invitees that the two, plainly indicated, glass entrance doors had glass panels on either side of them, plaintiff said he knew the panel was there. This knowledge on plaintiff's part obviated the need for any warning being given so far as [plaintiff] was concerned.

Relying on *Lopez,* this court affirmed a summary judgment against a lodge patron who had slipped and fallen on a path, saying

> [k]nowledge of danger on the part of plaintiff obviated any need for warning signs. [citing *Lopez* ] It would be absurd to put up a sign saying, "Slippery, Walk Carefully" or "Danger—Ice," when it tells the plaintiff something he is bound to know because of its presence which he can see and realize just as well through his own active senses, without prompting. There was no hidden danger but only a well-known prevailing condition.

*Bluejacket v. Carney,* 550 P.2d 494, 498 (Wyo.1976).

Appellant's accident reconstruction witness, both in deposition and in affidavit, speculates that Mudge would have reacted sooner and adjusted her rate of speed and driving behavior to safely traverse the construction area with which she was familiar had signs been properly placed. That opinion and other similar opinions that adorn this witness's conclusory testimony are rank conjecture, are inadmissible evidence under W.R.E. 702 and 704, and fail to create a genuine issue of material fact. *Brebaugh v. Hales,* 788 P.2d 1128, 1140 (Wyo. 1990); *Baros v. Wells,* 780 P.2d 341, 345 (Wyo.1989); and *see Stephens v. State,* 774 P.2d 60, 66–67 (Wyo.1989). As this court strongly reminded litigants in *Bluejacket:*

> Mere conjecture is never sufficient to establish liability: if the walks had been shoveled, sanded or salted or there had been a warning sign, and the light was on, the plaintiff *might* not have been injured. That is not enough. Causal connection has not been established. There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner of the facilities in question.

*Bluejacket,* 550 P.2d at 497.

I would affirm the summary judgment for Kloefkorn–Ballard.